# CHARLESTON.

## JARVIS *v.* COWGER'S HEIRS.

Submitted June 18, 1895—Decided Nov. 23, 1895.

1. LAND CONTRACT—TIME OF PERFORMANCE—FORFEITURE.
    In contracts for sale of real estate, time of performance of its stipulations is not in general, in equity, of the essence of the contract, producing loss or forfeiture of rights.

BUTCHER & HARDING and W. T. ICE for appellant.

BRANNON, JUDGE:

Cowger purchased at a sale by the commissioner of school lands of Randolph county of land of Jarvis, as forfeited, a certain parcel, with Currence as silent partner in the purchase. Afterwards Jarvis applied to Cowger to redeem or arrange it, and Cowger agreed upon a certain arrangement, if Currence would consent; and, Jarvis having purchased Currence's interest, he and Cowger made a written contract whereby Cowger agreed that Cowger relinquish the land to Jarvis, he paying the commissioner what Cowger, as purchaser, was to pay, and making Cowger a deed for a certain piece of land described in the instrument, containing ten acres; and Jarvis paid Cowger in hand eighteen dollars and seventy five cents, the cash payment made by Cowger at the sale, and was to pay Cowger's note of fifty six dollars and twenty five cents, given the commissioner for the deferred payment, not then due.

Jarvis made an agreement satisfactory to the commissioner to pay this note at a certain time; but, on the day of its maturity, Cowger insisted upon paying it to the commissioner, and did so, and took from him a deed to himself as purchaser. Shortly afterwards, Jarvis went to the commissioner to pay Cowger's note as stipulated, and was informed that Cowger had already lifted it; whereupon he left with the commissioner money to reimburse Cowger what he had paid, and the commissioner tendered it to Cowger, who refusing to receive it, Jarvis brought this suit to compel Cowger to convey the land to him under their agreement. The decree cancels the contract, and dismisses Jarvis' bill, and he appeals.

Cowger says Jarvis forfeited his contract, first, in not paying his note. We plainly see, however, that only the act of Cowger in paying it, in violation of his contract with Jarvis, prevented Jarvis' payment of it. Jarvis was not remiss, as he appointed a time for payment satisfactory to the creditor, as the latter told Cowger when he came to pay the note, but Cowger insisted on paying it. For some reason Cowger had changed his mind, and sought to evade the fulfillment of his agreement. And, besides, did not Jarvis promptly offer reimbursement to him? The only

other reason Cowger gives for not consummating the agreement is that the ten acres were not within the land he relinquished to Jarvis. When the agreement was written, Cowger said it was, and directed the surveyor then with Jarvis how to survey it, fixing the corners just as he chose, he having lived there many years, and knowing those lands well, and Jarvis living far away, and not knowing them, and, moreover, this arrangement was merely a release or quitclaim by Cowger to Jarvis, reserving out of it to Cowger this boundary, so as to forbid Jarvis claiming it, and no warranty was intended by Jarvis. If it was in the land relinquished, Jarvis was not to take it, but quitclaim it to Cowger. And still, moreover, it is by no means certain that it is not within the Jarvis land. The evidence is inadequate to show it. No survey has been made to show its true location.

Equity will not forfeit a contract for such unsubstantial reasons, and make Jarvis lose his land for a small amount of taxes, when full justice can be so readily done by Cowger. There ought to have been, and ought hereafter to be, entered, a decree requiring the heirs of Cowger, or a commissioner for them, to convey, with special warranty, the said land to Jarvis, excepting the ten acres specified in the agreement between them, upon payment to the administrator of Cowger of the amount he paid to the commissioner of the school lands in payment of the note. Reversed and remanded.