## WESLEY *v.* EELLS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 176. Argued and submitted March 9, 1900.—Decided April 9, 1900.

Specific performance of an executory contract is not of absolute right. It rests entirely in judicial discretion, exercised, it is true, according to the settled principles of equity, and not arbitrarily or capriciously, yet always with reference to the facts of the particular case.

A court of equity will not compel specific performance if under all the circumstances it would be inequitable to do so.

It is a settled rule in equity that the defendant in a suit brought for the specific performance of an executory contract will not be compelled to take a title about which doubt may reasonably exist or which may expose him to litigation.

Speaking generally, a title is to be deemed doubtful where a court of co-ordinate jurisdiction has decided adversely to it or to the principles on which it rests.

THE case is stated in the opinion.

*Mr. William H. Lyles* for appellant.

*Mr. Arthur St. J. Newberry* for appellee.

*Mr. William A. Barber* as *amicus curiæ*, filed a brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

This suit was brought in the Circuit Court of the United States for the Northern District of Ohio by Wesley a citizen of New York against Eells a citizen of Ohio.

The case made by the bill was as follows: The State of South Carolina, being the owner in fee of certain real estate situated in the city of Columbia in that State — part of the property being known as Agricultural Hall — caused the same to be sold at public auction, Wesley becoming the purchaser.

By the terms of sale the purchaser was required to pay in cash one third of the price and to execute his bond and mortgage on the property to secure payment of the balance in two equal annual instalments with interest from the date of purchase, the obligor to have the option of paying the whole or any part of the sum so secured before the maturity thereof.

At the instance of Wesley the Commissioners of the Sinking Fund of South Carolina executed a deed in fee simple for the property to one J. W. Alexander who consented to act as trustee for the plaintiff, the deed however not containing any declaration of the trust. Thereupon Alexander executed to the Treasurer of the State his bond for the payment of the purchase price — the mortgagor being accorded the privilege of paying before maturity the whole or any part of the money secured.

The mortgage not having then been filed for record, and Wesley having furnished to Alexander a sufficient amount of what is known as South Carolina Revenue Bond Scrip, the latter tendered to the state Treasurer of South Carolina in such scrip the principal and interest of the above bond. That officer had authority to receipt for the sum due on the bond and mortgage. The tender was refused by the state Treasurer.

By the laws of South Carolina a tender in full of the amount due on a mortgage of real or personal property at any time when the mortgagor has the right to pay the same operates as a satisfaction and extinguishment of the lien of the mortgage, whether the amount be accepted or not and whether the mortgagor keeps himself in a position to make good the tender or not.

Notwithstanding the tender, the state Treasurer caused the above mortgage to be recorded in the proper office.

Subsequently, Alexander conveyed the premises in question to Wesley.

The bill contains a statement of the history of the above-mentioned revenue bond scrip and of the plaintiff's connection therewith. Reference was made to the act of the General Assembly of South Carolina approved the 15th day of September, 1868, entitled "An act to authorize additional aid to the Blue Ridge Railroad Company in South Carolina," and to the act approved the 2d day of March, 1872, entitled "An act to relieve the State of South Carolina of all liability for its guaranty of the bonds of the Blue Ridge Railroad Company by providing for the securing and destruction of the same," which provided for the issue of certificates of indebtedness styled revenue bond scrip, which should express that the sum mentioned therein was due by the State to bearer, and that the same would be received in payment of taxes and all other dues to the State except special taxes levied to pay interest on the public debt. By the fourth section of the above act of 1872 the faith and funds of the State were pledged for the ultimate redemption of the revenue bond scrip and county treasurers were required to receive the same in payment of all taxes levied by the State, except in payment of special taxes levied to pay interest on the public debt, and the state Treasurer and all other public officers were required to receive the same in payment of all dues to the State.

The plaintiff had received from the state Treasurer of South Carolina under the circumstances detailed in the bill (which need not be repeated) a large amount of revenue bond scrip. He stated that he was the owner and holder of the scrip received by him and charged in his bill that by the tender to the state Treasurer the Alexander mortgage had been extinguished by operation of law.

The revenue bond scrip referred to was in the following form:

$100.                         No. 21.                         $100.

*Revenue Bond Scrip.*

THE STATE OF     [Palmetto Tree]     SOUTH CAROLINA.

COLUMBIA, S. C., *March* —, 1872.

Receivable as one hundred dollars in payment of all taxes

and dues to the State, except special tax levied to pay interest on public debt.

NILES G. PARKER, *State Treasurer.*

One hundred dollars.                    One hundred dollars.

Such being Wesley's relations to the mortgaged property he made a written contract with Eells whereby he agreed for the price of $20,000 to be paid in cash to convey to the latter in fee simple the premises in question, free from any valid lien or incumbrance whatever.

The plaintiff offered to deliver to Eells a deed for the premises in fee simple and demanded payment of the purchase price. But Eells refused to receive the deed or to pay the price, alleging that the scrip tendered by Alexander were not valid obligations of South Carolina and therefore did not constitute a legal tender of the amount due the State nor operate as an extinguishment of the mortgage.

The plaintiff brought into court and tendered a deed to Eells and offered to agree that the plaintiff might retain so much of the price for the property as would protect it against any taxes that had accrued upon it.

The relief asked was a decree that the defendant should accept the deed tendered to him and pay the purchase price of the property, less any sum to meet the taxes assessed upon it.

The defendant admitted in his answer that there were no liens or incumbrances upon the property except the mortgage described in the bill and such taxes as were due thereon to the State and to the city of Columbia. But he alleged that the statute authorizing revenue bond scrip to be received in payment of dues to the State had been repealed, and county auditors and county treasurers forbidden to collect any taxes for the redemption of such scrip; that the act under which the scrip was issued was in violation of the Constitution of the United States forbidding the States from emitting bills of credit and also in violation of the constitution of South Carolina, and such scrip was null and void.

The defendant stated in his answer that he had always been and was then willing to perform his contract, provided he re-

ceived a full and perfect title to the premises free from any valid lien and was protected in the quiet and peaceable possession thereof.

The plaintiff filed a general replication; and the cause was submitted on the pleadings and certain documentary evidence showing the history of the revenue bond scrip, the legislation of South Carolina, and certain decisions of the Supreme Court of that State.

The Circuit Court of the United States held that the bond scrip issued under the act of March 2, 1872, were bills of credit and void; that the tender of scrip by Alexander to the state Treasurer was therefore not a valid tender and did not operate to extinguish the mortgage given by Alexander to the State; and that the Agricultural Hall property was still incumbered by the mortgage and plaintiff could not give defendant a clear title to it. The bill was dismissed at the plaintiff's cost.

In the memorandum of evidence used by stipulation of the parties reference was made to the case of *Tindal* v. *Wesley*, 167 U. S. 204, 221. But the decision there has no bearing upon the present case. That was an action by Wesley to recover the possession of the property here in dispute — the defendants being in possession only in their capacities as officers or agents of South Carolina, and insisting that the suit against them was, in legal effect, one against the State within the meaning of the Eleventh Amendment of the Constitution of the United States. "The settled doctrine of this court," it was said in that case, "wholly precludes the idea that a suit against individuals to recover possession of real property is a suit against the State simply because the defendant holding possession happens to be an officer of the State and asserts that he is lawfully in possession on its behalf. . . . Whether the one or the other party is entitled in law to possession is a judicial, not an executive or legislative, question. It does not cease to be a judicial question because the defendant claims that the right of possession is in the government of which he is an officer or agent." These extracts indicate the scope of the decision in *Tindal* v. *Wesley* and make it clear that that decision does not determine any question now presented.

The vital question in the present case is whether the plaintiff was entitled to a decree for specific performance. The plaintiff bases his right to such a decree upon the ground that Alexander's tender of revenue bond scrip to the Treasurer of South Carolina had the effect to extinguish the lien of the mortgage executed by him, and consequently that plaintiff's deed conveying the fee would give to Eells a good title. This view assumes that the revenue bond scrip tendered by Alexander to the state Treasurer was legally receivable in payment of the amount on the Alexander bond and mortgage. But as will be seen from an examination of the cases of *State ex rel. Shiver* v. *Comptroller General*, 4 S. C. 185, and *Auditor* v. *Treasurer*, 4 S. C. 311, the Supreme Court of South Carolina has held that the revenue bond scrip issued under the act of March 2, 1872, were bills of credit which the Constitution of the United States forbade the States to emit, and therefore were null and void. And in that view the court below concurred. What then will be the effect of a decree in the Circuit Court of the United States sitting in Ohio requiring the defendant to pay the amount he agreed to pay and to take the deed tendered him by the plaintiff? What would the defendant get under such a decree in consideration of the amount paid by him for the property? He would get a deed from Wesley for premises covered by a mortgage of record which the highest court of the State in which the property is situated will presumably hold not to have been discharged by the tender of revenue bond scrip. And we do not perceive that Eells could by any affirmative action on his part bring the question of the validity of that tender before any court in South Carolina for adjudication. He could not sue the State against its consent, and no suit except one to which the State was a party would effectively reach such a question and release the property from the incumbrance created by the Alexander mortgage. So that if compelled to take Wesley's deed Eells would be powerless to have his title made clear of record, unless the State brought suit to foreclose the mortgage and thereby enabled him in defence to relitigate the question already concluded in the courts of that State by judicial decision. It is thus manifest that a decree for specific performance would put upon him a title that

was not at all marketable and could not become such except by successful litigation.

In *Hennessy* v. *Woolworth*, 128 U. S. 438, 442, this court said: " Specific performance is not of absolute right. It rests entirely in judicial discretion, exercised, it is true, according to the settled principles of equity, and not arbitrarily or capriciously, yet always with reference to the facts of the particular case " — citing *Willard* v. *Tayloe*, 8 Wall. 557, 567; *Marble Co.* v. *Ripley*, 10 Wall. 339, 357; 1 Story's Eq. Jur. § 742; *Seymour* v. *Delancey*, 6 Johns. Ch. 222, 224. To the same effect are *McCabe* v. *Matthews*, 155 U. S. 550, 553; *Rust* v. *Conrad*, 47 Mich. 449, 454; *Petty* v. *Roberts*, 7 Bush, 410, 419; *Huntington* v. *Rogers*, 9 Ohio St. 511, 516. A court of equity will not compel specific performance if under all the circumstances it would be inequitable to do so. *Starnes* v. *Newsom*, 1 Tenn. Chy. Rep. 239, 244; *Parish* v. *Oldham*, 3 J. J. Mar. 544, 546; *Clowes* v. *Higginson*, 1 Ves. & Beames, 524, 527.

Again, it is a settled rule of equity that the defendant in a suit brought for the specific performance of an executory contract will not be compelled to take a title about which doubt may reasonably exist or which may expose him to litigation. *Morgan's Heirs* v. *Morgan*, 2 Wheat. 290, 299, 301; *City of Tiffin* v. *Shawhan*, 43 Ohio St. 178, 183. And, speaking generally, a title is to be deemed doubtful where a court of coördinate jurisdiction has decided adversely to it or to the principles on which it rests. Fry on Specific Performance, 3d ed. § 870 and authorities there cited. One of the grounds upon which a decree for specific performance was denied in *Hepburn* v. *Auld*, 2 Cranch, 262, 278, was that it would impose upon the defendant the necessity of bringing a suit to perfect his title.

The principle is well illustrated in *Jeffries* v. *Jeffries*, 117 Mass. 184, 187, which was a suit for the specific performance of a written agreement for the purchase of certain real estate. One of the objections to the title was that it was incumbered by conditions that would interfere with the enjoyment of the property. The Supreme Judicial Court of Massachusetts there said: " Hence the propriety and the necessity of the rule in equity that a defendant, in proceedings for specific performance, shall

not be compelled to accept a title in the least degree doubtful. It is not necessary that he should satisfy the court that the title is defective so that he ought to prevail at law; it is enough if it appear to be subject to adverse claims which are of such a nature as may reasonably be expected to expose the purchaser to controversy to maintain his title, or rights incident to it. *Richmond* v. *Gray*, 3 Allen, 25; *Sturtevant* v. *Jaques*, 14 Allen, 523; *Hayes* v. *Harmony Grove Cemetery*, 108 Mass. 400. He ought not to be subjected, against his agreement or consent, to the necessity of litigation to remove even that which is only a cloud upon his title." So in *Lowry* v. *Muldrow*, 8 Rich. Eq. 241, 247, the court said that on bills for specific performance of contracts concerning lands, " courts of equity do not force the purchasers to take anything but a good title, and do not compel them to buy lawsuits." Numerous other American cases announce the same rule.

The principle is also illustrated in many English cases. In *Parker* v. *Tootal*, 11 H. L. Cas. 143, 158, it was said to be an established rule of equity not to compel a purchaser to take a doubtful title. In *Rose* v. *Calland*, 5 Ves. 185, 187, which was a suit by devisees in trust to obtain the specific performance of an agreement entered into by the defendant for the purchase of an estate, certain reasons were given why the plaintiff could not make a sufficient title, one of which was that the Court of Exchequer, in *Nagle* v. *Edwards*, 3 Anstr. 702, had announced principles which, if followed, would prevent the defendant from obtaining such a title as he ought to have. The Lord Chancellor said: " If I was to send this case to the master, I should create a needless expense; for upon the case in the Court of Exchequer, *Nagle* v. *Edwards*, which I have looked into, my difficulty is this: Can I make a person take a title in the face of that decision? If I do, I decree him to enter into a lawsuit. . . . I desire to be understood as not entirely agreeing with the determination of the Court of Exchequer. But I should be in a strange situation in desiring a purchaser to take this title, because I think the point a pretty good one, though the Court of Exchequer have determined against it. It is telling him to try my opinion at his expense." So in *Price* v.

*Stange*, 6 Madd. Chy. 159, 165, in which the Vice Chancellor said : " In attempting to lay down a rule upon this subject, I should say that a purchaser is not to take a property which he can only acquire in possession by litigation and judicial decision." In *Pyrke* v. *Waddingham*, 10 Hare, 1, 8, it was held that the court will not compel a purchaser to take a title that " will expose him to litigation or hazard."

We are of opinion that the plaintiff's title is not such as a court of equity should compel the defendant to accept. He should not have been compelled to accept it even if the court below had been of opinion that the revenue bond scrip tendered by Alexander were not bills of credit.

Upon the grounds stated, and without expressing any opinion upon the question whether the revenue bond scrip referred to were or were not bills of credit within the meaning of the Constitution of the United States, the decree below is

*Affirmed.*