## CHARLESTON·

NEILL *et als v.* McCLUNG *et als.*

Submitted June 11, 1912.    Decided December 10, 1912.

1.  SPECIFIC PERFORMANCE—*Discretion—Defect of Title—Abatement of Price.*

    In the exercise of its discretionary powers, a court of equity will refuse specific performance of a contract of sale of land at the suit of the vendee, if the vendor is unable to convey good title to the land or some of it, and the vendee declines to accept a conveyance of such title as the vendor can convey, with an abatement of purchase money, commensurate with the value of the land lost.  (p. 465).

2. · VENDOR AND PURCHASER—*Rights of Vendee—Subsequent Sale.*

    On failure of the vendee to elect to take such title or land as the vendor can convey, under such circumstances, his refusal to pay the balance of purchase money in default of perfect title and the lapse of a reasonable period of time for such election and application for specific performance conformable thereto, the vendor may sell and convey the land to another,

and the subsequent purchaser, succeeding to the rights of his vendor, will take good title as against such prior vendee, though he purchased with notice of the prior contract. (p. 466).

3. ATTORNEY AND CLIENT—_Want of Authority—Nature of Proceeding._

The decree and all proceedings in a suit instituted by an attorney, without authority from the party whom he professes to represent, is void. (p. 469).

4. SAME.

Authority conferred upon an attorney to sue for specific performance of a contract or to quiet the title to real estate, does not include authority to sue only for rescission of the contract on which his client's right or claim is founded. (p. 469).

(WILLIAMS, JUDGE, absent.)


Appeal from Circuit Court, Marion County.

Suit by A. D. McNeill and others against C. L. McClung and others. Decree of dismissal and complainants appeal.

_Affirmed in part. Reversed in part._

_Caldwell & Caldwell, Osenton & Horan, Wm. M. O. Dawson_ and _Andrew Price,_ for appellants.

_Haymond & Fox,_ for appellees.


POFFENBARGER, JUDGE:

This appeal brings up questions determinable by the principles and rules applicable to the relation of vendor and purchaser of real estate under an executory contract.

One of the plaintiffs, W. A. Porter, having purchased of C. L. McClung of Greenbrier county, by a written contract, dated July 6, 1905, the timber 20 inches in diameter two feet from the ground and above that size, on 5,000 or 6,000 acres of land, assigned equal shares therein with himself to J. B. Moore, James Flynn and W. H. Cobb. The last named party assigned his interest to A. D. Neill. The purchase price was $5.00 an acre and Porter was to pay, and did pay, $2,000.00 at the date of the agreement, and payment of the balance was deferred, $4,000.00 until McClung should have a survey and an abstract of the title made and execute for delivery a general warranty deed for the timber, and the residue for a period of one year. McClung

bound himself to have the survey made by October 1, 1905, giv-
ing Porter notice of the time thereof, and the parties agreed to
bear equally the expense of the survey, but no provision of the
contract in terms placed any part of the cost of the abstract on
Porter. The total expense of both, incurred by McClung, was
about $600.00, of which about $150.00 was paid for the survey
and the balance for the abstract, no part of either of which sums
Porter ever paid.

Defects in McClung's title obstructed and prevented perform-
ance of the contract as made. Some years prior to the making
thereof, he had conveyed some or all of the lands on which the
timber was to children and relatives of his or vested the equitable
title in them by contracts, in view of litigation with his first
wife. He claimed, however, to have reserved the timber, but as
to this, the terms were not clear and there was doubt as to the
legal affect of the reservation. Just what these deeds and con-
tracts were is not clearly disclosed by the record, but McClung's
divorced wife had never relinquished her inchoate right of dower,
or a lien by decree for alimony, and he had conveyed some or
all of the land to his present wife and his numerous children
by his first wife. The reservation seems to have secured to him
no more than such timber as he might need and rights of grazing
and cultivation. Besides he had contracted a sale of some of
the timber to one F. H. Anschutz, from which he had not been
released. Dr. R. L. Telford also held an option or contract for
the purchase of timber on part of the land, executed by O. G.
McClung, a son of C. L. McClung.

The survey seems to have been made not long after the date
of the contract, and the abstract is certified as of February 1,
1907. After its completion, it, together with a deed executed
by McClung and wife, was sent to Porter, who refused to ac-
cept the deed or pay the balance of the purchase money, on ac-
count of the defects in the title. Later McClung procured from
Anschutz a release of his contract and thus removed one of the
obstacles to the consummation of the sale; but the title was
still unsatisfactory to Porter. As to communications between
McClung and Porter or McClung and Cobb, Porter's represen-
tative, after relief from the Anschutz claim, the evidence is
not specific and explicit enough to give very clear information,

but McClung seems to have insisted upon the validity of his title and Porter upon the seriousness of the defects therein. In January or February, 1907, Porter and Cobb met in Charleston where the former introduced the latter to attorney H. L. VanSickler, of Lewisburg, suggesting his suitability, in case they should need the services of an attorney, respecting their interests in the McClung land. Correspondence between Cobb and VanSickler began with a letter from the former to the latter, dated October 31, 1907, expressing a desire to employ him. VanSickler accepted the employment by a letter dated November 2, 1907. In the correspondence thus started, the defects in the title were discussed, VanSickler uniformly suggesting fatality and incurability of the title by reason of the dower right in McClung's first wife and the conveyances to McClung's children and McClung's inability to ged rid of these conveyances and incumbrances. He repeatedly expressed the opinion that Porter and his associates would do well to get their money back. He spoke deprecatingly of the character of McClung. Cobb adhered to his wish and desire to obtain, not a return of the money paid, but the timber. He seems not to have appreciated fully the import of VanSickler's suggestion of a rescission nor to have apprehended VanSickler's real or pretended impression that his clients acquiesced in his assertion of the impossibility of obtaining the timber and the advisability of saving their money by means of rescission. Cobb insisted that he induce McClung to clear up the title and make it merchantable and VanSickler gave assurances of his willingness and efforts to induce McClung to do so. A *praecipe* was filed by J. W. Arbuckle as solicitor for McClung in a suit styled Charles L. McClung v. Amanda McClung and numerous other persons named, in which there was a direction to issue process returnable to September Rules, 1908. VanSickler also filed a *praecipe* in the suit by McClung v. Anschutz and directed issuance of process returnable to April Rules, 1908, but no bill was filed in either cause. VanSickler seems to have worked through Arbuckle to induce McClung to institute the first one of these two suits. McClung either denied Arbuckle's authority to institute the suit against his wife and children or refused to prosecute it. On the 23rd day of February, 1909, VanSickler instituted a suit in the name of

Porter against C. L. McClung for rescission of the contract entered into by them. In the bill there was an express prayer for rescission because of McClung's failure to make title to Porter in accordance with the terms and provisions of the contract. McClung answered the bill, insisting upon the sufficiency of his title, denying plaintiff's right to rescission, and depositions were taken.

In the meantime J. O. and L. E. McClung had commenced negotiations with C. L. McClung for the purchase of the timber included in the Porter contract and the timber of smaller dimensions on the same land not included therein and the timber on other lands of C. L. McClung, and also with the parties holding the conveyances, contracts and other evidences of title, except Anschutz and Telford, (who had executed releases to C. L. McClung), which had been made the basis of Porter's refusal to accept McClung's deed and pay him the balance of the purchase money. Just how far these negotiations had progressed the record does not disclose, but the price to be paid by J. O. and L. E. McClung was $10.00 an acre and they were negotiating a re-sale to Rider and Stalnaker at $15.00 an acre. Rider and Stalnaker were negotiating another sale to Brewster and Bright at $20.00 an acre. Charles S. Dice was representing the McClungs as attorney and no doubt as agent. In this state of affairs, Dice and VanSickler went to Elkins in September, 1909, without previous arrangement, for a conference with Cobb whom they met and with whom they conferred in the presence and hearing of C. W. Maxwell. As to the purpose of this conference and what occurred, the testimony is conflicting. Dice and VanSickler say they went there to get Cobb to induce Porter and his associates to bear one-half of the cost of the abstract, in the settlement of the suit for rescission, and that they took with them and exhibited to Cobb the papers in that suit. Cobb and Maxwell deny this, saying no papers were exhibited to them and they were misinformed as to the purpose and object of that suit. Cobb insists he never gave any instruction or authority to bring the suit for rescission, but on the contrary, that he had directed a suit to perfect or quiet the title, and that VanSickler and Dice left him and Maxwell under the impression that such a suit had been brought. He and Maxwell both in-

sist that the professed object and purpose of Dice and VanSickler were either to get rid of the contract of Porter and his associates by a purchase of their interest or to effect a sale to them of the interest which J. O. and L. E. McClung were said to have acquired in the timber on the land covered by Porter's contract, but not included therein, and perhaps of the other timber J. O. and L. E. McClung had acquired or were negotiating for. Maxwell was attorney for J. B. Moore, one of Porter's associates, respecting some matters, but said he had no authority to act for Moore as to the McClung land. Cobb told them he had parted with his interest in the land and had no authority to concede or relinquish the rights of Porter and his associates or modify the contract. The conference resulted in an agreement on the part of Cobb to write Porter, Flynn, Moore and Neill, apprising them of the situation and suggesting a meeting between them and the McClungs, at an early date, at Lewisburg, in an effort to bring about an adjustment or agreement. It was agreed that meantime nothing further should be done in the suit instituted by VanSickler in Porter's name. There was subsequent correspondence between Cobb and VanSickler concerning this meeting, but they do not agree in their testimony as to the purpose of the contemplated conference. The meeting was never held. On the 9th day of October, 1909, just a few days after the Elkins conference, a decree was entered in the cause of Porter v. McClung, rescinding the Porter contract and providing for the repayment by McClung to Porter of the sum of $2,542.39, which the decree ascertained to be the amount paid by Porter to McClung under his contract, with interest from the date thereof until the date of the decree. This money was subsequently paid by some of the McClungs to VanSickler. There is controversy as to whether VanSickler notified Cobb of the entry of the decree and payment of the money, and, later, when Porter and Neill, having been informed of the entry thereof, went to Lewisburg for further information about their rights and interests, their interview with VanSickler was very unsatisfactory.

On the 10th day of November, 1909, C. L. McClung and wife executed a deed conveying the lands to J. O. and L. E. Mc-Clung. On the same day, J. O. and L. E. McClung executed a

deed to E. G. Rider and F. D. Stalnaker. On the 18th day of November, 1909, Rider and Stalnaker conveyed the timber to Amos Bright and J. H. Brewster.

This suit was brought by Neill, Porter, Flynn and Moore against C. L. McClung, W. H. Cobb, L. E. and J. O. McClung, Rider Stalnaker, Bright and Brewster, to annul the decree of rescission and compel specific performance of the original Porter contract of sale. The cause was transferred to the circuit court of Marion county, in which a decree dissolving injunctions against the collection and disposition of purchase money notes executed by J. O. and L. E. McClung, Rider and Stalnaker, and Bright and Brewster, in connection with their respective purchases, pending the suit, and dismissing the bill, was entered.

Despite the conflict of testimony as to many questions of fact brought into the record, bearing upon the good faith of C. L. McClung, the McClung family and VanSickler, there are some vital matters as to which there is none. A long period of time elapsed between the date of the contract and that of the authorization of a suit, if any at all, to compel specific performance. The contract was dated July 6, 1905, and VanSickler was not directed to bring any suit of any kind until about the beginning of the year 1909. In the meantime, McClung had caused a survey and abstract of title to be made and tendered them with a deed for such right, title and interest as he had, and Porter had declined to accept the deed and pay the balance of the purchase money. McClung had also gotten rid of the Anschutz contract as an obstacle to the consummation of the sale by the procurement of a release thereof. He had incurred an expense of something like $600.00 for the survey and abstract in an effort to consummate the sale. Porter and his associates were unwilling to accept such title as he then had. They made their demand for specific performance upon condition that McClung should make an absolutely good title to the timber. The correspondence clearly indicates their unwillingness to accept such title as McClung had and their determination to have perfect and absolute title or none at all. As to the character of the claims of the former wife and children the record is not clear. It is certain, however, that McClung could claim nothing against them in contradiction of his deeds, if the claims were under

deeds. A parol trust cannot be asserted by a grantor against the letter of his deed. *Troll v. Carter*, 15 W. Va. 567; *Poling v. Williams*, 55 W. Va. 69. The meager description of these conveyances found in the record indicates that they were absolute and unconditional as to what they conveyed, but reserved certain rights to the grantor. If so, those rights were all he could claim against them. The grantees were in a position, as to all title and right conferred upon them, to sell or give it back to him or other persons, but he was utterly powerless to force them to make any disposition of it. His lack of title, legal or equitable, seems to have been accepted as a matter of fact by Porter and his associates, and made the basis of their refusal to carry the contract into execution. If he had an equitable title, or good legal title merely beclouded by invalid conveyances, his deed would have passed it to the vendees. The deed he tendered them would have put them in his shoes and enabled them to have obtained all he had. This they were not willing to accept. They stood upon their legal rights and demanded of McClung what he could not do, except by the cooperation and consent of the holders of these outstanding interests. The vendees made no effort to get in these interests themselves. They proceeded under the impression of right in themselves to stand upon their legal contract and compel McClung to get them in.

There is a vast distinction between a vendee's right in equity and his right at law. He may have a right of action at law on his contract for breach of its obligation and yet none to the aid of a court of equity in seeking to compel performance thereof. The vendees, on discovery of defect in the title, could elect whether they would take such as the vendor could make, with an abatement of the purchase money on account of the defect, or, foregoing the right of specific performance, sue at law on the contract for breach of the obligation thereof. The vendees in this instance did neither. McClung had tendered performance as far as it was within his ability and it had been declined. After that, there was long delay, despite his removal of some of the obstacles to the execution of the contract. Delay is not accurately expressive of their conduct. They never did sue, nor direct a suit to be brought, for what they were entitled to,

namely, for such right, title and interest as McClung could convey. They are not even now seeking that. They never made any such election as the rules and principles of equity devolved upon them, as a condition to right to specific performance. They stood and still stand, upon their legal contract, demanding something beyond the power of a court of equity to give, because not within the power of the defendant.

In contracts positive and not conditional, the incapacity of the defendant to perform his part thereof furnishes no answer to an action for damages, but is a good ground of defense against specific performance. Fry Spec. Perf., sec. 909; Watterman Spec. Perf., sec. 125; Warvell on Vend., sec. 752; Pom. Spec. Perf., secs 292, 352; *Bates* v. *Swiger,* 40 W. Va. 420; *Ellison* v. *Torpin,* 44 W. Va. 414; *McCue* v. *Ralston,* 9 Grat. 430. "When a contract is entered into which requires the consent of a third person, and such consent cannot be obtained, specific performance will not be decreed. If, therefore, the wife's consent is necessary to the performance of a contract entered into by the husband, or husband and wife, and she refuses to give it, he will not be decreed to obtain his wife's consent." Watterman Spec. Perf., sec. 127. The text here given is thoroughly sustained by adjudicated cases as well as reason and justice.

Clearly, therefore, the vendees wholly misapprehended their right under equitable rules and principles. They took their stand upon their contract as a court of law would view and apply it. To obtain the aid of a court of equity, they would not be required to relinquish or yield up their legal rights, it is true, since equity follows the law, but to obtain an equitable remedy, lying beyond the province and powers of a court of law, they were bound to abate from their legal right, for the purposes of the equitable remedy, so much of that right as a court of equity could not give, because not within the power of the vendor. They were therefore bound to elect, as has been stated, to take only such title as McClung could convey, and apply to a court of equity for that and no more, except the right of abatement from the purchase money, proportionate to the abatement of their legal right under the contract. When the disability in respect to the subject matter is only partial, as where the vendor does not own all the land he has contracted to sell,

the vendee has a right to take so much thereof as the vendor can convey. Watterman Spec. Perf., sec. 130.

This being the measure of the equitable right of the vendees, their failure to claim it within a reasonable time, and, secondly, their failure to claim it at all, or ever to signify their willingness to take such title as the vendor could confer, effectually precludes their right to specific performance. Their bill in this cause demands not only such title as C. L. McClung had at the date of the contract, but also that title as perfected and completed by the acquisition of the outstanding interests in McClung's first wife and his children. It is true the deed executed by him and his wife purported to convey complete title to J. O. and L. E. McClung, but that deed was executed after the decree of rescission, when it was supposed the Porter interest had been extinguished and released. The answer of J. O. and L. E. McClung avers their purchase of these outstanding interests, and J. O. McClung swears he obtained from the former wife by payment of about $500.00 and from about twelve children, by the payment to some of them of $100.00 and more to others, releases, and, further, that he thinks C. L. McClung could not have obtained them at all, because the feeling between them was bitter and they would have nothing to do with him. He further says C. L. McClung had nothing to do with the purchase of these outstanding interests and never paid for them, directly or indirectly. Certainly they were not gotten in for the purposes of the Porter contract, and it does not appear that they could have been gotten in for such purposes. On the contrary, it seems they could not. The prayer of the bill is, first, for the annulment of the decree of rescission and all the subsequent conveyances and a decree for a conveyance of all the titles to the plaintiffs, or, if the court should refuse this, then a decree for all of the purchase money of the sale by C. L. McClung to J. O. and L. E. McClung over and above $5.00 an acre. They do not ask only for $5.00 an acre for such timber as C. L. McClung had good title to. Hence their unwillingness even now to take a decree only for what McClung had power to give is clear. Never having made any such election as a court of equity will permit as the basis of an application

for its extraordinary remedy, they have never been in a position. to demand it.

They were bound not only to make this election, but also to pursue their remedy with diligence. Equity aids only the diligent. Those who seek specific performance of a contract must show themselves to have been ready, desirous, prompt and eager to perform the contract on their part. *Clay* v. *Deskins*, 36 W. Va. 350; *Harrison* v. *Harrison*, 36 W. Va. 555; *Coal Co.* v. *Bell*, 38 W. Va. 297; *Dyer* v. *Duffy*, 39 W. Va. 148.

As time was not made an essential element of the contract, inapplicability of this principle may be urged, but the rule as to time applies not on the question of remedy, but on the existence or non-existence of obligation. *Jarvis* v. *Cowger*, 41 W. Va. 268; *Abbott* v. *L'Hommedieu*, 10 W. Va. 677. If it has been made in express terms essential and not complied with, a court of equity will no more recognize the contract as valid than a court of law, except under its limited jurisdiction to relieve from forfeiture. When it has not been made essential, non-compliance therewith works no forfeiture and the contract is valid in law as well as in equity. Courts of equity, conceding the validity of the contract, still require readiness, willingness, and diligence on the part of an applicant for relief. .

Never having put themselves in a condition to call upon Mc-Clung for specific performance, within the long period of time he allowed them, the vendees were precluded from resisting his violation of the contract. Though he had no legal right to sell to other persons, the vendees, by their refusal to abate their demand for the purposes of equity interposition and their lack of diligence, lost their right to appeal to a court of equity to compel a conveyance to them. Having slept upon their rights, under a misapprehension as to what they were, and never properly asserted them nor offered to do so, it was too late, at the date of the deed to J. O. and L. E. McClung, for them to call upon McClung in a court of equity and force him to convey. Assuming that J. O. and L. E. McClung, Rider and Stalnaker, Bright and Brewster, all had notice through the agency of Dice, of all the details of the Porter contract, and the assignments thereof to Flynn, Moore and Cobb, and the assignment from Cobb to Neill, these people had a right to stand in the

shoes of C. L. McClung, and, as he had the right successfully to
resist specific performance, or rather the demand for more
than a court of equity would give so they might do the same
thing.  Their rights are co-extensive with those of C. L. Mc-
Clung, despite their notice of the contract and all interests and
claims held under it.  Though aware of the contract, they were
equally aware of the unwillingness of Porter and his associates
to accept from McClung all they had a right in equity to compel
him to give.  They may not be innocent purchasers for value
without notice, but they have nevertheless succeeded to all the
rights of C. L. McClung and he could offer successful resistance
to the only demand the vendees were willing to make upon
him.  All he could give he offered to give.  There was no
occasion for a suit to get that, and it had been rejected.  This,
the subsequent vendees knew, and it availed them as well as their
vendors.

Though the court properly refused specific performance, it
should not have dismissed the bill.  One of its objects was the
annulment of the decree of rescission which destroyed the legal
right of the vendee under the contract.  VanSickler was never
authorized to institute a suit for rescission.  In no letter from
Cobb, is there a suggestion of authority for the institution of
such a suit.  Cobb uniformly insisted upon the institution of
proceedings to quiet the title and obtain the timber.  It is true
he suggested in one or two of them a desire for the return of
the money, if the timber could not be obtained, but there was
no direction, express or implied, to institute a suit for the sole
purpose of obtaining a return of the money.  VanSickler's re-
peated expression of opinion against the possibility of obtain-
ing good title and of preference for proceedings to procure re-
payment of the money were never accepted by Cobb, and he
could not thus make out authority in himself.  As to his motives
and the propriety of his conduct, it is wholly unnecessary to
enter upon any inquiry here.  He may deserve the severity of
the animadversions upon his conduct, found in the briefs, and
he may not.  He may have honestly believed he was authorized
to do what he did, but it takes two persons to make a con-
tract.  It suffices to say he had no authority to institute such
a suit or accept such a decree, and his lack of authority so

to do is ample ground for setting it aside and wholly dismissing the proceedings in that cause. *State* v. *Cain,* 64 W. Va. 578; *Coal Co.* v. *Doolittle,* 54 W. Va. 210; *Hast* v. *Railroad Co.,* 52 W. Va. 409; *Justice* v. *Lawson,* 46 W. Va. 177; *Robb* v. *Vos,* 155 U. S. 13; *United States* v. *Beebe,* 180 U. S. 45; Mechem on Agency 821. The effect of the annulment of that decree, on the ground of its invalidity, will be to restore the contract, or relieve it from the cloud of that decree, for such purposes as the vendees therein may see fit to use it. They may sue on it for damages, or if they should be advised of the inexpediency of so doing, they may have the right to elect to take in lieu thereof the money in the hands of VanSickler, but we stop here with the setting aside of all proceedings and the decree in that cause, as being utterly void, for want of authority in the attorney.

For the reasons herein stated, the decree complained of will be affirmed in so far as it dissolved the injunctions and refused specific performance of the contract set forth in the bill and proceedings and decrees costs to the defendants except C. L. McClung and wife. In all other respects, it will be reversed and a decree will be entered here setting aside, annuling and declaring void the decree and all the proceedings in the chancery cause of *W. A. Porter* v. *C. L. McClung,* lately pending in the circuit court of Greenbrier county, a copy of the record of which is set forth in the bill and proceedings in this cause. The decree will also require C. L. McClung and Amanda McClung to pay to the appellants their costs in this Court.

*Affirmed in part. Reversed in part.*