## GIDDENS et al. v. ESTERO BAY ESTATES, Inc.

(Circuit Court of Appeals, Fifth Circuit. March 18, 1927.)

No. 4951.

1. Courts ⊜314—That organization of land corporation was to permit suit in federal court does not defeat jurisdiction if corporation is bona fide owner.

A corporation, which is bona fide owner of land in another state, may maintain suit in a federal court to quiet title against citizens of that state, though its own stockholders are also citizens of the same state and though one purpose of the foreign incorporation was to enable the corporation to sue in that court.

2. Courts ⊜312(1)—Suit by grantee to quiet title against parties to contract with grantor held not without jurisdiction of federal court as by assignee of chose in action (Judicial Code, § 24 [Comp. St. § 991]).

A nonresident owner of land, the requisite jurisdictional facts appearing, may maintain suit in a federal court to quiet title to the land against defendants, claiming an interest under a contract with complainant's grantor, though the grantor could not have maintained suit in that court; such suit not being one for cancellation of the contract brought as assignee of a chose in action within Judicial Code, § 24 (Comp. St. § 991).

3. Specific performance ⊜99—Purchaser's right to compel conveyance by warranty deed of vendor's nonmarketable title held lost by delay.

Where, when the time arrived for completion of a contract for sale of land to be conveyed by clear title, vendor's title was not clear, he was without right to compel performance by the purchaser but the latter had a right of action to enforce specific performance by conveyance of such title as vendor had, with warranty, and to hold him liable for breach of the warranty; but, the contract then being unilateral, and the right to its enforcement equitable, such right was lost by failure to exercise it promptly.

Appeal from the District Court of the United States for the Southern District of Florida; Lake Jones, Judge.

Suit in equity by the Estero Bay Estates, Inc., against L. B. Giddens and Earl S. Craft. Decree for complainant, and defendants appeal. Affirmed.

For opinion below, see 14 F.(2d) 171.

John B. Singeltary, of Bradenton, Fla., and John C. Cooper and H. P. Osborne, both of Jacksonville, Fla. (Cooper, Knight, Adair, Cooper & Osborne, of Jacksonville, Fla., on the brief), for appellants.

W. E. Kay and Thomas B. Adams, both of Jacksonville, Fla. (Kay, Adams, Ragland & Kurz, of Jacksonville, Fla., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This is an appeal from a decree in favor of the appellee, a Delaware corporation, adjudging that the appellee, by virtue of a warranty deed made to it in May, 1925, by James W. Berry and his wife, Anna W. Berry, acquired a fee-simple title to described lands in Lee county, Fla.; that a contract, dated October 9, 1924, executed by appellee's grantors to appellant L. B. Giddens, granting him the right within 30 days to purchase said lands, and a contract made between said Giddens and his wife and appellant Earl S. Craft, dated November 28, 1924, for the sale of said lands to said Craft, have no binding force as to said lands, and that no right in and to said lands can be enforced under those contracts; that appellee's title to said lands be quieted of the cloud created by said contracts, and that said appellants, and all persons claiming by, through, or under them, or either of them, since the commencement of this suit, be restrained and enjoined from asserting any right, title, or interest whatsoever in and to said lands by virtue of said contracts, or either of them.

The above-mentioned contract dated October 9, 1924, for a recited consideration of $100, the receipt of which was acknowledged, granted to Giddens the right to purchase said lands at the price of $75,000; $35,000 whereof was payable in cash upon delivery of a good and sufficient warranty deed of said land, the balance being payable in two equal instalments evidenced by interest-bearing notes secured by first mortgage on the lands; the contract providing for Giddens giving within said 30 days' notice to the Berrys of his intention to exercise the granted right to purchase, for the Berrys thereupon furnishing to Giddens abstract of title and allowing Giddens 10 days within which to examine said abstract, and "that said parcel of land shall be free and clear of all incumbrances and liens of any nature and kind whatsoever." The notice provided for was duly given, whereupon an abstract of title was furnished to Giddens. The abstract indicated the existence of sundry defects in the title, and showed the pendency of a suit brought by one Sey-

.mour asserting an undivided interest in the lands and the record of a lis pendens notice of that suit.

Giddens, by a letter dated December 2, 1924, addressed to Mr. Berry, called attention to the Seymour suit, and the record of the lis pendens notice, and, referring to it, stated: "I am advised that this constitutes a lien and charge upon your land, and we will, of course, expect and must ask that you have this incumbrance removed before asking us to accept the title or make some reasonable and satisfactory provision for taking care of this charge upon your land." A letter of Mr. Berry to Mr. Giddens, dated December 22, 1924, contained the statement: "We now give you final notice that, if you do not fulfill your part of the agreement on or before December 27, 1924, we will consider negotiations terminated through your refusal to comply with terms of agreement." After that letter was written, between the date of it and January 10, 1925, there were several meetings between Mr. Berry and his attorney and Mr. Giddens and his attorney, at which defects in the title were discussed. During those discussions Mr. Berry indicated a willingness and purpose to clear up defects in the title other than the Seymour suit. In those conferences Mr. Berry's position with reference to that suit was that the claim asserted therein was unjust and invalid, and would not be dealt with otherwise than by resisting and defeating the suit.

During those conferences the matter of indemnifying Giddens against loss from the Seymour suit was discussed, but there was no understanding or agreement, then or later, as to the kind or form of indemnity to be given and accepted. A letter of Mr. Berry to Mr. Giddens, dated January 26, 1925, stated: "I beg to advise you concerning land deal heretofore existing between us, wherein I was to sell your tract of land of (7,000) seven thousand acres in Lee county, Florida—that conditions are such with me that I cannot favor you any further by delaying this matter under my construction of this deal, in which you had the right to take it or not according to the status of the title, and, not having taken it within the time prescribed, I hereby notify you that the contract is canceled and I will not consider the same of any force or effect from this time. I herewith inclose check and request you to return abstract which Mr. Singeltary has in his possession."

The check enclosed with the letter was the one for $100.00 given by Giddens when the contract of October 9, 1924, was executed. Soon after the receipt of that letter by Giddens he called on Berry, offered to return the check to him, and insisted that Berry go on with the curing of defects in the title, and Berry refused to do so.

On March 23, 1925, Mr. Berry and his wife made a contract with J. W. Blanding to convey to him, his nominees or assigns, said land, Blanding paying $6,000 as a binder, and agreeing to pay $44,000 in cash on delivery of a warranty deed and to give a mortgage to secure $62,500, the remainder of the purchase price; Berry and wife to give their warranty deed to the lands, to defend the Seymour suit and another suit which had been brought, and to protect the purchaser, to the extent of the amount to be secured by the mortgage, against those suits and against claims based on the above-mentioned Giddens and Craft contracts. Three other persons agreed to join Blanding in the investment in said lands. Blanding and his associates concluded to take title to the property in the name of a corporation, being influenced in doing so by the considerations that, each of them being a business man, they did not wish to have their investment in that property connected with or subject to their individual businesses or properties; that dealings with the property would be more expeditious if it was held by a corporation than it would be if the consent of joint individual owners and their wives was required; that each of the associates desired to use the stock issued to him as collateral for his individual obligations should he see fit to do so; and that by taking the property in the name of a corporation inconvenience from the death of one or more of the associates would be avoided, and the associates would avoid personal liability on the notes to be given for part of the purchase price.

In the discussion between the associates, all citizens of Florida, and their attorney of the question of the state in which the proposed corporation would be organized, the attorney mentioned the advantage of organizing under the law of another state, that, in the event of litigation as to the title to the lands, the corporation could invoke the jurisdiction of the Federal court. Pursuant to an assignment executed by Blanding the Berrys, by warranty deed dated May 22, 1925, conveyed said lands to appellee. By the terms of the mortgage then given by the appellee to the Berrys to secure $62,500, the deferred part of the purchase price, that mortgage was not enforceable until the final determination of the Seymour suit, or so long as there was in existence any claim as against said lands based on the above-mentioned contracts be-

tween the Berrys and Giddens and between Giddens and Craft; the mortgage providing for the application to judgments sustaining the claims asserted by the Seymour suit or based on the two just-mentioned contracts of the amounts secured by the mortgage or so much thereof as might be required to satisfy such judgments. The above-mentioned contract between the Berrys and Giddens was duly recorded prior to the making of the contract between the Berrys and Blanding, and when that contract was made Blanding had knowledge of the existence of the contract between Giddens and wife and Craft. On April 28, 1925, Giddens tendered to Mr. Berry the amount of the first payment, $35,000, called for by the contract, and notes and mortgage for the balance. Berry refused that tender. During the period from December, 1924, to and including April, 1925, the market values of Florida real estate were rising rapidly. This suit was brought on July 23, 1925, against said Giddens and Craft. The relief granted by that decree was in accordance with the prayer of the bill.

[1] For the appellants it was contended that under section 37 of the Judicial Code (Comp. St. § 1019), the suit should have been dismissed because it does not really and substantially involve a dispute or controversy properly within the court's jurisdiction. This contention is based on the facts that citizens of Florida procured the incorporation of the appellee in Delaware, and in doing so were influenced by a purpose to enable the proposed corporation to invoke the jurisdiction of the court below in litigation as to the lands in question. It was disclosed that the appellee was incorporated for the purpose of becoming the real owner of the lands, and that it was not contemplated that the individuals who brought about the incorporation of the appellee in Delaware would acquire title to that land or become interested in it otherwise than as stockholders of the corporation to which title to that land was to be conveyed. As the appellee acquired title to the land for itself, and was not to hold that title as trustee or agent for another, it is to be regarded as a bona fide owner. The fact that the persons who brought about appellee's incorporation under the laws of Delaware had the purpose of enabling it to invoke the jurisdiction of the federal court in litigation as to the land conveyed to it is not enough to oust the jurisdiction of that court. Rojas-Adam Corporation of Delaware v. Young (C. C. A.) 13 F. (2d) 988; Doane v. California Land Co. (C. C. A.) 243 F. 67.

[2] The jurisdiction of the court was challenged on the additional ground that the maintenance of it is forbidden by the following provision of section 24 of the Judicial Code (Comp. St. § 991): "No District Court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made." For the appellants it was suggested that this suit was one to enforce asserted rights of the Berrys to cancel their contract with Giddens, that that right was assigned by the Berrys to Blanding and passed to his assignee, the appellee, by the deed of the Berrys conveying their title to the appellee. No transaction of the Berrys purported to have the effect of assigning to Blanding or to the appellee any right of action of the Berrys against Giddens.

The appellee did not seek, and the decree in its favor did not adjudge, the cancellation of the contract between the Berrys and Giddens. As to that contract the extent of the relief sought and granted was that under it no right in or to the lands in question exists. The appellee's right to the lands having been acquired by deed purporting to convey the legal title, a suit by the appellee for the enforcement of its asserted rights as the owner of that land is not a suit on a chose in action. The deed to it not being a chose in action or colorable or fraudulent, the appellee as vendee and owner is entitled to sue in a court of the United States for the removal of clouds on its title, the requisite value and diversity of citizenship existing. Brown v. Fletcher, 235 U. S. 589, 35 S. Ct. 154, 59 L. Ed. 374; Realty Holding Co. v. Donaldson, 268 U. S. 398, 45 S. Ct. 521, 69 L. Ed. 1014.

[3] The contract between the Berrys and Giddens shows that the parties contemplated that in the event of Giddens giving the prescribed notice of his intention to exercise the right to purchase, the transaction was to be consummated upon the expiration of 10 days from the date of Giddens being furnished with an abstract of the title. Neither at that time nor at any subsequent time were the Berrys entitled to have the contract specifically enforced, as a court of equity would not compel Giddens to take a title which was the subject of litigation in a pending suit. Wesley v. Eels, 177 U. S. 370, 376, 20 S. Ct. 661, 44

L. Ed. 810. But Giddens had the right, by doing what the contract required of him, to exact specific performance of the obligation of the Berrys to convey to him by warranty deed such title to the land as they had, and to hold the grantors liable at law for any breach of their warranty. That right was subject to be lost by lack of reasonable promptness in exercising it. The conduct of Mr. Berry while the discussions with reference to clearing up the title were going on was inconsistent with a claim by him that during that time Giddens should have elected whether he would or would not accept such title as the Berrys had. Mr. Berry's letter of January 26th was explicit to the effect that he would not consent to any further delay on the part of Giddens, and that he did not recognize the contract as having any force or effect from that date.

The evidence does not indicate that after the date of that letter Giddens reasonably could have expected to get a conveyance of the lands from the Berrys otherwise than by a suit for specific performance. The situation at that time was such as to make the contract unilateral, as the Berrys could not enforce it, because they did not have a marketable title to convey, and Giddens, or his assignee, Craft, then chargeable with no default or delay which had not been waived, was entitled to exact specific performance by the Berrys. So long as Giddens or his assignee had that right, and it was unexercised, the Berrys were in the position of not being able either to enforce their contract with Giddens, or to sell and convey to another such title to the land as they had, and Giddens or his assignee, without a compliance with the obligations of Giddens under his contract to purchase, was in the position of the owner of the lands entitled to the benefit of an increase in its market value. That contract having become unilateral, the party having the right to enforce specific performance of it lost that right by delaying to elect to take such title as the Berrys had, upon performing the contract on the part of the purchaser, and to pursue his remedy with diligence, unless that delay is fully explained and justified. The right being purely an equitable one, it cannot be preserved, unless the conduct of the party having it is fair and equitable, and he is diligent in claiming and seeking the enforcement of it, as equity aids only the diligent, who do equity. Knox v. Spratt, 23 Fla. 64, 6 So. 924; Rose v. Henderson, 63 Fla. 564, 59 So. 138; Neill v. McClung, 71 W. Va. 458, 76 S. E. 878; Pomeroy on Specific Performance (3d Ed.) § 417; Fry on Specific Performance (6th Ed.) § 1103.

When this suit was brought, nearly six months after January 26, 1925, no suit asserting the right of Giddens or his assignee to specific performance had been brought, and, so far as the record indicates, no such suit has ever been brought. The evidence falls far short of showing that Giddens or his assignee was reasonably prompt in signifying a willingness to take such title as the Berrys could confer, or invoked or pursued his remedy with diligence. The circumstances of the delay of Giddens and his assignee in taking any action to get such title as the Berrys had were such as to make that delay notably unjust and unfair to the Berrys, if, notwithstanding the unexcused delay for several months, the right of Giddens or his assignee to enforce specific performance was preserved while the market value of the lands was rising rapidly, as evidenced by a comparison of the price specified in the contract of the Berrys with Blanding with the price stated in their contract with Giddens. The result would be to enable the party having that right to retain a hold on the lands without complying with the terms of the contract to purchase, and to enable such party to make the exercise of the right dependent upon the rise or fall of the market value of the lands. We conclude that the right of Giddens or his assignee Craft to enforce specific performance was lost by a failure, within a time which was reasonable under the circumstances, to elect to accept such title as the Berrys could confer, and by the total failure to invoke and pursue his remedy with diligence.

The contracts between the Berrys and Giddens and between Giddens and Craft evidenced the creation of an equitable right to acquire the title of the Berrys to the lands in question by complying with prescribed conditions. As the appellee had notice of those contracts when the deed of the Berrys to it was executed, the land conveyed was subject to that equitable right, if that right remained in existence and enforceable when that deed was executed. That equitable right having ceased to exist when this suit was brought, the contracts mentioned then had no binding force as to said lands, and, no right in or to those lands under those contracts being then enforceable, those contracts were subject to be treated as clouds on appellee's title. We conclude that the action of the court with reference to those contracts was not erroneous. As above indicated, the decree appealed from

does not purport to cancel those contracts, or to affect any legal right or remedy of Giddens or Craft, based on those contracts or either of them.

The decree is affirmed.