130

MANDEVILLE & THOMPSON, Inc., v.
DANCIGER OIL & REFINING CO. .
No. 6763.

Circuit Court of Appeals, Fifth Circuit.
Dec. 12, 1932.

Gordon Simpson, of Tyler, Tex., and Harry Hammerly, of Chickasha, Okl., for appellant.

U. M. Simon and H. J. Zimmerman, both of Fort Worth, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

This is an appeal from a decree denying specific performance of a contract to sell an oil and gas lease. On June 22, 1931, the parties entered into a contract whereby appellee agreed to sell, and appellant to buy, an oil and gas lease on 27 acres of land. Appellee was to furnish abstracts showing good and marketable title within five days, after which appellant was to have five days to examine the abstracts, and in the event of valid objection thereto appellee was to have fifteen days to clear the title. On June 27 suit was brought by Loden, a former owner, to cancel the lease. That suit, of course, placed the title in such condition that appellant could not be compelled to accept it. Wesley v. Eells, 177 U. S. 370, 20 S. Ct. 661, 44 L. Ed. 810. On July 11, the day before the extension expired, appellant asked for an extension of five or ten days, and on the next day appellee replied agreeing to an extension of fifteen days. During the period covered by that extension appellee offered to warrant the title, and according to the testimony it was amply able financially to do so; but appellant stood upon its rights under the contract as written, except that it expressed a willingness to grant further time for performance. On July 31 appellee notified appellant that it had been unable to settle with Loden, and that the contract was at an end. On August 3 appellant replied that it stood ready to perform the contract and expected appellee to do the same, but would grant a reasonable time within which to perfect the title. On August 24 appellant by letter stated to appellee that, since it had tendered the property and its tender had been refused because of the condition of the title, it considered that it was not further bound and declared the contract terminated. The parties hereto were made defendants in the suit brought by Loden, and in that suit appellee prayed to have canceled, as a cloud on its title, the contract here involved, which appellant had caused to be recorded. On April 15, 1932, appellant answered appellee's claim thus asserted against it by setting up its rights under the contract, and prayed, in the event appellee should prevail in the suit brought by Loden, for specific performance and for a decree requiring appellee to assign the lease to it. On April 16 a decree of set-

tlement was entered in the main suit as between Loden and appellee quieting appellee's title. The suit thereafter proceeded between the parties hereto, and on May 12, 1932, appellant filed an amended bill against appellee, for the first time praying unconditionally for a decree for specific performance, and offering to pay the purchase money stipulated in the contract. The purchase price of the lease was payable partly in money and partly in oil. Appellee's vice president, who was in charge of its business in Texas, gave testimony, which was uncontradicted, to the effect that the lease had become more valuable since the date of the contract, in that more of the purchase price could be obtained in cash, making it unnecessary to accept so large a percentage of the purchase price in oil that might be produced from the lease.

[redacted] Time was the essence of the contract. It was in effect made so by the provisions of the contract relating to short periods for furnishing abstracts, for the examination of them, and for curing the title. It was contemplated by the parties that the contract would be closed and the sale completed within 30 days. Neither party could have anticipated the Loden suit, or an indefinite extension of time because of the condition of the title. When Loden brought his suit on June 27, 1931, appellee ceased to have a contract which it could enforce, because it did not have a marketable title, and the time for curing the title had expired. But upon the bringing of that suit appellant became entitled at its election to abandon the contract and sue for damages, or to compel specific performance and take such title as appellee had. The right to specific performance was one which would be lost unless it were promptly exercised, because while it existed appellee could neither compel appellant to take the lease nor sell it to any one else, with the result that it would suffer from a decrease, but could get no benefit from an increase, in the value of the lease; whereas, appellant, so long as its right to compel specific performance continued, was in a position where it would not suffer by a decrease, but would be benefited by an increase, in value. It would therefore be most inequitable from appellee's standpoint if appellant were not required to exercise its equitable right to specific performance without undue delay. Giddens v. Estero Bay Estates (C. C. A.) 18 F.(2d) 265; Kinney v. Schlussel, 116 Or. 376, 239 P. 818.

[redacted] Appellee, while the contract remained mutual, offered to convey the lease and to warrant the title to it notwithstanding Loden's suit, and it is not contended that it was not financially able to make a warranty of the title good. Appellant was not under any obligation to accept that warranty, because it had stipulated for a marketable title; but it is nevertheless true that before the contract became unilateral it could have acquired such title as appellee had without suing for specific performance. Appellant was not entitled, without risk or loss, to assume a position which would enable it to speculate upon whether it would reject the lease or take it at a profit, according as the value decreased or increased during the period of nine or ten months that elapsed between the bringing and the settling of the Loden suit. Oil leases are notoriously subject to great fluctuations in value. Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 592, 23 L. Ed. 328. Specific performance is not an absolute right, but rests in the sound discretion of the chancellor; and should be denied where the contract is not mutual, but is one-sided and operates harshly, unfairly, or oppressively upon the defendant. Fry on Specific Performance (6th Ed.) § 1103; Pomeroy's Specific Performance (3d Ed.) § 38; 1 Pomeroy's Equity Jurisprudence (4th Ed.) § 400. Our conclusion is that appellant, under the circumstances, was under a duty to act with great promptitude, and that it waited too long, considering the nature of the property which was the subject-matter of the contract, before pursuing the equitable remedy of specific performance.

The decree is affirmed.