## SMITH ET AL. *v.* TURNER ET AL.

VENDOR AND PURCHASER.—*Specific Performance.—Doubtful or Unmarketable Title.*—A purchaser of real estate can not be required to accept a conveyance thereof, where, because of a mistake in the description of the land in a former conveyance through which the vendor holds, the title as to a part of the land is so doubtful that it may expose the vendee to litigation on the part of a third person, or where for such reason the title is not marketable.

SAME.—*Husband and Wife.*—A pleading is bad on demurrer wherein a purchaser of real estate, who has refused to accept a conveyance thereof tendered to him by his vendor, alleges, as an excuse for such refusal, a former conveyance of such land by a third person who was married at the time of his conveyance, in which he was not joined by his wife, who is still living, but wherein such purchaser does not show that his vendor's title came through such third person.

DEPOSITION.—*Taken in Term.*—A deposition can not be taken in term time, except by agreement of the parties.

From the Randolph Circuit Court.

*J. Smith,* for appellants.

*E. L. Watson* and *L. J. Monks,* for appellees.

WORDEN, J.—This was an action by the appellants against the appellees, on the following promissory note, viz.:

" Nov. 14th, 1870. One day after date, we promise to pay to the order of Smith & Espy seven hundred dollars, value received, without any relief whatever from valuation or appraisement laws, with ten per cent. interest until paid. If

this note is not paid at maturity, the undersigned agree to pay expenses of collection, including attorney's fees.

(Signed :)                    " THOMAS R. TURNER.

                            " WILLIAM TURNER."

The defendants appeared, and pleaded to the action. Such of the pleadings as are necessary to be noticed will be considered hereafter in this opinion. Issue was joined, and the cause was tried by the court, and the court found the issues joined for the plaintiffs. The defendants thereupon moved for a new trial and filed their reasons therefor, but the motion was overruled, and an exception taken. Thereupon the court, on motion of the defendants, rendered final judgment on the finding in their favor and against the plaintiffs, and the latter excepted. The plaintiffs below appeal, and both parties have assigned error.

The plaintiffs. have assigned as error the rendition of the judgment in favor of the defendants, when there had been a finding of the issues in favor of the plaintiffs.

The statute provides, that " where upon the statements in the pleadings one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court, though a verdict has been found against such party." 2 G. & H. 218, sec. 372.

We need not examine whether or not the defendants were entitled to judgment on the statements in the pleadings, for the reason that, if they were, still there was an error committed in making up the pleadings, which renders the judgment in their favor erroneous.

The defendants, in the fourth paragraph of their answer, alleged, in substance, that the note was executed by Thomas R. as principal, and by William as surety ; that as a part of the note, and at the time it was executed, the plaintiffs made their agreement in writing upon the back thereof, as follows, viz. : " We agree to return this note to the makers thereof, if he makes a warranty deed for eight acres of land agreed upon between the parties, so as to convey title, in a reasonable

length of time, otherwise this note is to be in full force and effect.                                          SMITH & ESPY."

That Thomas R., the maker referred to in the agreement, did within a reasonable time, to wit, on, etc., together with his wife, make out a warranty deed to the plaintiffs for the eight acres of land referred to in the agreement, and tendered the same, duly executed, to the plaintiffs, and in all respects complied with the contract; that the deed is in the hands of the plaintiffs, wherefore no copy can be filed.

The fifth paragraph was substantially the same as the fourth, with the additional averments that the deed was so executed as to convey the title, and that it was accepted by the plaintiffs.    The plaintiffs replied:

"4. To the fourth and fifth paragraphs of answer, that ninety days after the delivery of the note, to wit, on," etc., " the plaintiffs demanded payment thereof, and thereupon the defendant Thomas R. tendered to the plaintiffs a warranty deed for land alleged to lie in Randolph county, Indiana, and described in the deed as follows : ' Beginning at the north-east corner of section three (3), in township twenty (20), of range fifteen (15) east, at a stone on the Indiana boundary line ; thence west on said section line thirteen and forty-four one-hundredths (13 44-100) rods ; thence south 11 degrees west and parallel with said boundary line twenty-eight and sixteen one-hundredths (28 16-100) rods to the center of the Greenville and Deerfield state road ; thence eastwardly along the center of said state road seventy and fifteen one-hundreths (70 15-100) rods to a stone in section twenty-three (23) ; thence north 11 degrees east parallel with said Indiana boundary line thirty and one-half (30½) rods ; thence west fifty-two and one-half (52½) rods to a stone on said boundary line ; thence north along said boundary line thirty-three and sixteen one-hundredths (33 16-100) to the place of beginning, containing eight acres more or less.'    That Thomas R. held the land agreed upon between the parties by a conveyance to him from one Elisha Cox and wife, and that Cox pretended to have held

VOL. L.—24

the land by a conveyance to him from one Jonathan W. Quinn and wife and one Valentine Quinn, in which pretended conveyance the land is described as follows :" (Here follows substantially the same description as that in the deed tendered by Thomas R. to the plaintiffs, excepting that the distance from the terminus of the second line at the center of the Greenville and Deerfield state road " eastwardly along the center of said state road to a stone in section twenty-three (23)," is described as being twenty and fifteen one-hundredths (20 15-100) instead of seventy and fifteen one-hundredths (70 15-100) rods.) " That said Elisha Cox held said land by no other title whatever, and when the deed was so tendered to plaintiffs they refused to accept the same because of said defects apparent upon the face of the conveyances, and informed said Thomas R. that they would not accept it, and pointed out the defect in the conveyances from Quinn to Cox and in the deed tendered; and Turner left the deed on the counter of one of the defendants."

To this paragraph of the plaintiffs' reply a demurrer for want of sufficient facts was sustained, and the plaintiffs excepted. This ruling the appellants have assigned for error.

The following plat, taken from the record, will serve to show the boundaries of the land described in the deed tendered to the plaintiffs, which, it is not disputed, was the land contemplated by the agreement on the back of the note.

The deed from the Quinns to Cox, under which Thomas R. claimed to hold the property, described the line from C to D, as shown in the plat, along the Greenville and Deerfield state road, as being twenty and fifteen one-hundredths rods, instead of seventy and fifteen one-hundredths rods, being, say, two-sevenths of the length of the line as described in the deed tendered to the plaintiffs. This would extend the line from C to about the point "*a*" shown on the plat. But it is earnestly insisted by counsel for the appellees that the deed from the Quinns to Cox conveyed to the latter the land described in the deed tendered to the plaintiffs, and therefore that Cox could convey to Thomas R. and he to the plaintiffs.

There is doubtless a mistake in the deed from the Quinns to Cox, and it seems most probable that the mistake consists in describing the line along the Greenville and Deerfield state road as being twenty and fifteen-hundredths instead of seventy and fifteen-hundredths rods. It may be assumed as more probable that one mistake only was committed than that two or more were committed.

If the line from C along the Greenville and Deerfield state road should be projected but twenty and fifteen-hundredths rods to "*a*" in the plat, then a line from that point parallel with the line DE would cut the line EF a short distance only from F, so that the fourth and fifth lines described in the deed could have but a tithe of the length attributed to them, and the quantity of land contained within such boundary would be perhaps much less than half that mentioned. Perhaps the point D, and consequently the length of the line CD, could be ascertained by tracing the lines backward by courses and distances from the starting point A, the north-east corner of the section mentioned, to F, and from that point to E and from E to D. The point C could be ascertained by following the lines in the same way from the starting point. Having ascertained the points C and D, the length of the line CD, whatever it might be, might be easily ascertained.

We are by no means prepared to say that the deed from the Quinns to Cox did not convey the land intended to be con-

veyed to the plaintiffs and described in the deed tendered to them. See *Laub* v. *Buckmiller*, 17 N. Y. 620.

But conceding that Cox, by his deed from the Quinns, might have acquired title to the whole of the premises, it was not, in our opinion, such a title as the plaintiffs were bound to accept. The defect in the description of the land in the deed from the Quinns might subject the plaintiffs, should they be required to accept the title, to vexatious litigation. The title of Cox, under his deed, to the whole land may be said to be doubtful. In 1 Sug. Vend., bottom p. 385, it is said that, " to enable equity to enforce a specific performance against a purchaser, the title to the estate ought, like Cæsar's wife, to be free even from suspicion. * * It has, therefore, become a settled and invariable rule, that a purchaser shall not be compelled to accept a doubtful title." See, also, note *d* to same page.

The law is thus stated in *Richmond* v. *Gray*, 3 Allen, 25, 27 :

" On this subject, courts of equity hold a vendor to great strictness. Formerly the practice was to decide for or against the validity of the title; and compel the purchaser to take it as good, or dismiss the bill because it was held bad. But this rule was objected to as absurd and unjust; and it has long since been changed. A court of equity will not now compel a purchaser to accept a title which is so doubtful that it may expose him to litigation, though the court may believe it to be good. For the decree of the court is *in personam*, and not *in rem ;* and it binds only those who are parties to the suit, and those claiming through them; and in no way decides the question as against the rest of the world. If therefore there be a reasonable chance that some third person may raise a question against the owner of the estate, after the completion of the contract, the court will not compel him to accept it."

But the courts have gone further, and held that the vendor must be able to make a marketable title. 1 Sug. Vend., bottom p. 337, note *b*.

In *Allen* v. *Atkinson*, 21 Mich. 351, 361, Judge COOLEY, in delivering the opinion of the court, said that a purchaser had an undoubted right to a good title, and also a right to insist

that the title should be a marketable one, not open to reasonable objection.

In *Swayne* v. *Lyon*, 67 Penn. St. 436, 439, SHARSWOOD, J., in delivering the opinion of the court, said:

"It has been well and wisely settled that under a contract for the sale of real estate, the vendee has the right not merely to have conveyed to him a good but an indubitable title. Only such a title is deemed marketable; for otherwise the purchaser may be buying a lawsuit, which will be a very serious loss to him both of time and money, even if he ultimately succeeds. Hence it has been often held that a title is not marketable where it exposes the party holding it to litigation."

The defect in the description in the deed from the Quinns to Cox might not only have subjected the plaintiffs to litigation, had they accepted the deed tendered, but the title was far from marketable in another and the strict sense of that term. A person desirous of purchasing the land, upon looking through the title deeds and discovering the defect in the description, would be much less likely to be satisfied with the title, and therefore much less likely to purchase, than if the description had been correct. The defect would, in some measure at least, operate against the sale.

We are of opinion, on these grounds, that the fourth paragraph of the reply was good, and that the court erred in sustaining the demurrer thereto.

The plaintiffs filed a seventh paragraph of reply to the fourth, fifth, and sixth paragraphs of the answer, in which they alleged that at the time the said Valentine Quinn executed the deed described in the fourth paragraph of the reply, he had a wife living, who is still alive, and who did not join in the conveyance.

A demurrer was sustained to this paragraph, and this ruling is assigned for error.

This paragraph of the reply does not sufficiently show that the title under which Thomas R. claimed came through Quinn, and was therefore defective.

We now turn to the appellees' cross assignment of errors.

There was a finding of the issues joined, as we have seen, for the plaintiffs, and the defendants, the appellees herein, moved for a new trial.

The court in term time ordered the deposition of a witness, one Joseph R. Jackson, to be taken, and the deposition was accordingly taken during the term, and read upon the trial of the cause. This was done over the exception of the defendants. This was error. Depositions cannot be taken in term time except by the agreement of the parties. 2 G. & H. 175, sec. 250; *Raymond* v. *Williams*, 21 Ind. 241. The defendants were entitled to a new trial.

The judgment below is reversed, with costs, and the cause remanded, with instructions to the court below to grant the defendants a new trial, and to overrule the demurrer to the fourth paragraph of the plaintiffs' reply, and for further proceedings.

Petition for a rehearing overruled.