### MEADOWS et al. v. MICHEL.

(Supreme Court, Appellate Division, First Department. December 30, 1909.)

1. BOUNDARIES (§ 3*)—METES AND BOUNDS—PARTY WALLS.

Where a conveyance described property by metes and bounds as commencing at a point 233 feet from the intersection of a street and certain railroad property, "the northerly and southerly lines of said lot running through party walls," the description of metes and bounds controls; it not being affected by the incidental reference to the party walls, which did not attempt to locate the lines in their center, but would have been satisfied by lines anywhere within the walls.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

2. VENDOR AND PURCHASER (§ 129*)—DOUBTFUL TITLE—REFUSAL TO ACCEPT DEED—JUSTIFICATION.

Where a vendor contracted to convey land, and it was shown that the building which stood upon the land overlapped the adjoining lot 8 inches or more, the vendor's title to the land on the adjoining lot upon which part of the building stood was so doubtful as to justify the vendee in refusing the deed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 129.*]

3. VENDOR AND PURCHASER (§ 129*)—DOUBTFUL TITLE—REFUSAL TO ACCEPT DEED—JUSTIFICATION.

Where plaintiffs contracted to purchase property from defendant which was shown by a survey to have the lot lines fixed within party walls, and which was not true according to another survey, and the description of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the lot by metes and bounds, alone considered, placed the southern lot line five inches south of the southern wall, the defendant's title to the strip south of the party wall was so doubtful as to justify plaintiff in refusing the deed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 129.*]

Appeal from Special Term, New York County.

Action by James Meadows and another against John S. Michel. Judgment for defendant, and plaintiffs appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Harold Swain, for appellants.

Louis Hanneman, for respondent.

McLAUGHLIN, J. The parties entered into a contract for the sale by the defendant, and the purchase by the plaintiffs, of certain real estate in the city of New York. At the time fixed for the closing of the transaction by the delivery of a deed of conveyance, the plaintiffs claimed that the defendant was unable to convey a good title, and this action was brought to compel him to perform his contract, or, in case he was unable to do so, to recover the amount paid and the expenses incurred in searching the title. The trial court found that the plaintiffs were not justified in refusing the title offered, and directed specific performance, and from the judgment entered to that effect the plaintiffs appeal.

The premises described in the contract were part of a tract of land conveyed in 1896 to one Olsson. This tract was situate on the northwesterly side of Eagle avenue, having a frontage of 75 feet, commencing at a point 210 feet northeasterly from the intersection of that side of Eagle avenue with the northeasterly side of land occupied by the Morrisania Branch Railroad, and being 120 feet deep. It was equivalent to three lots 25x120 feet, and the contract between the parties describes the center lot.

At the trial it appeared that Olsson erected substantially upon this lot a five-story brick building with party walls some 16 inches thick, and in 1898 he conveyed the lot to one Brunjes, describing it by metes and bounds as commencing at a point 233 feet distant from the intersection of Eagle avenue with the land occupied by the railroad "the northerly and southerly boundary lines of said lot running through party walls." In 1906 Brunjes conveyed the lot to the defendant by a deed describing the property in the same way, which deed also referred to an annexed survey of the premises made by a city surveyor named Mapes. This survey showed the northerly and southerly boundary lines as running through practically the center of the party walls on each side of the building. The defendant contracted to convey to the plaintiffs this lot, described by metes and bounds, "the northerly and southerly boundary lines of said lot running through party walls, being the same premises shown on a survey attached to the deed of Brunjes to" the defendant.

The plaintiffs' objection to the title is based upon a survey made by one Hollerith, which shows that the southerly face of the southerly party wall is some five inches north of the southerly lot line as fixed by metes and bounds, and that the northerly face of the northerly party wall is from three feet one inch to three fee six inches north of the northerly line. This survey differed from the Mapes survey, both in the location of the lot lines and in the location of the party walls. According to this survey, neither of these lines runs through either party wall at all, and the building encroaches some three feet six inches on the premises adjoining to the north. The party walls being 16 inches thick, it is over 26 feet wide between the center of the party walls. If the survey made by Hollerith is correct in these particulars—which the court found it was, at plaintiffs' request—the defendant certainly could not convey a marketable title. Olsson had apparently intended to erect the building exactly on this center lot, so that the center lines of the party walls should coincide with the lot lines, and it may be assumed that he and his successors in title supposed he had done so, and that the location of the building and the lot lines were as shown by the Mapes survey, because his widow, to whom he devised all his property, purported to convey to one Kirschoff the lot immediately adjoining on the north, as shown by such survey. It seems to be conceded that at the time of the conveyance to Brunjes, Olsson then owned the lots adjoining on the north and south. The trial court was of the opinion that as the building was 25 feet wide between the center lines of the party walls, which was an erroneous assumption if the Hollerith survey was correct, and, since it was the evident intention of Olsson and all the other parties to convey the lot covered by the building, the northerly and southerly boundary lines were fixed in both the contract and the deeds by these party walls as monuments, and that the erroneous description by metes and bounds might therefore be rejected or disregarded.

If the property had been described as commencing at a point 233 feet from the intersection of Eagle avenue with the land of the railroad "on the center line of a party wall," etc., this might be true, but there is a marked distinction between a point thus located and a line definitely fixed by courses and distances with the incidental statement that it runs through the center of a party wall. This was pointed out in the case of Smyth v. McCool, 22 Hun, 595, in which it was held that where property was described by metes and bounds, with the incidental statement that two of the boundary lines ran for part of their distance through the center of party walls and the lines as fixed by metes and bounds varied some five inches from the center lines, the title to the center of the walls was so doubtful that a purchaser should not be compelled to accept it. The same distinction was recognized in Muhlker v. Ruppert, 124 N. Y. 627, 26 N. E. 313. In the present case, according to the Hollerith survey, there is a variation of over a foot between the lot lines and the center lines of the party walls, and, if the incidental reference to the party walls could be considered as controlling the definite description by metes and bounds, no point within the party walls is specified. The deeds and contract do not attempt

to locate the lines in the center of the party walls. They are located by metes and bounds, and lines anywhere within the 16-inch party walls would satisfy the description. If the lines actually fixed by metes and bounds could be moved at all, it might just as well be contended that they should be moved only enough to place them just within the party walls so as to satisfy the description as to place them in the center of the party walls. Not only this, but the building, according to the findings, is something over 26 feet wide, and, if this be true, then it is impossible to determine or fix the lines of a 25-foot lot within the party walls, certainly not with anything like accuracy. It would therefore seem that the defendant's title to eight inches or more of the lot upon which the building stands is exceedingly doubtful, and for that reason the plaintiffs were justified in refusing to accept the deed.

It is urged that Olsson conveyed, and the defendant has good title to, the lot described by metes and bounds, and that, since the encroachment of the building is upon a lot owned by Olsson at the time he conveyed, such encroachment is not a defect because his grantors would have an easement so long as the party wall stood. The plaintiffs, however, contracted to purchase the premises shown on the Mapes survey and on that survey the lot lines were fixed within the party walls, which is not true if the Hollerith survey is correct. Not only this, but, if the lot described by metes and bounds alone is considered, it is quite evident that the defendant's title to at least the five-inch strip between the southerly party wall and the lot line is exceedingly doubtful.

In the present state of the record, therefore, the plaintiffs were justified in refusing to accept a deed, and, if the Hollerith survey correctly locates the building and the lot lines, it is difficult to see how the defendant, without obtaining additional deeds, can establish his title to the property contracted to be conveyed. Hollerith testified, however, that he might have made an error in locating the intersection of the northwesterly side of Eagle avenue with the land of the railroad. It appears that 149th street has been opened just north of the railroad and property in that vicinity has for some years been located by the intersection of Eagle avenue and 149th street on the south and Eagle avenue and Westchester avenue on the north. Mapes testified that the point of beginning of the lot could be located only by working back from Westchester avenue, which he had done. It may be that upon a new trial defendant can show that he has good title, but upon the record now before us there is certainly so much doubt about it that a purchaser ought not to be compelled to take it.

The judgment appealed from, therefore, is reversed and a new trial ordered, with costs to appellants to abide event. All concur.