(79 South. 364)

BOYLAN et al. v. WILSON. (3 Div. 353.)

(Supreme Court of Alabama. June 6, 1918.)

1. VENDOR AND PURCHASER ☞130(1)—"GOOD TITLE."

A "good title" means a marketable title that can be sold to a reasonably prudent man who might desire the property, or that can be mortgaged to a person of reasonable prudence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good Title.]

2. SPECIFIC PERFORMANCE ☞8—DISCRETION OF COURT.

Specific performance of a contract to sell or buy realty is not a matter of absolute right, but rests in judicial discretion, to be exercised according to the settled principles of equity, not arbitrarily or capriciously, but always with reference to the facts.

3. SPECIFIC PERFORMANCE ☞16 — INEQUITABLE CONTRACT.

Specific performance of a contract to sell or buy realty will not be compelled if under all the circumstances it would be inequitable to do so.

4. SPECIFIC PERFORMANCE ☞95 — TITLE OF VENDOR.

A purchaser who has contracted for a good title in the vendor's suit for specific performance will not be required to take anything but a good title, and the court will not compel him to buy a lawsuit.

5. VENDOR AND PURCHASER ☞129(1)—DOUBT AS TO TITLE.

To avail as defense in an action to enforce specific performance of a contract to buy realty, doubt as to the title must be reasonable, must rest on debatable ground; a bare possibility of litigation not being efficient to render title doubtful.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. VENDOR AND PURCHASER ⊜130(6)—MARKETABLE TITLE—MISDESCRIPTION.**

A misdescription, in a not too remote deed in the chain of title of a vendor seeking to enforce specific performance against the purchaser, not capable of being corrected without litigation and the aid of parol evidence, operates to render the title unmarketable and not to be forced upon the purchaser.

**7. VENDOR AND PURCHASER ⊜130(6)—TITLE OF VENDOR—MISDESCRIPTION IN CHAIN OF TITLE.**

Where, in chain of immediate muniments of title of vendors of land seeking specific performance against purchaser, the lots, described by number, are referred to a platting named differently from that in contract of sale, vendors, whose contract requires them to make good title, cannot have specific performance.

**8. REFORMATION OF INSTRUMENTS ⊜30—JURISDICTION OF EQUITY—FORM OF ACTION.**

Only a court of equity, when its jurisdiction is efficiently invoked, can effect a reformation of a deed in the chain of title of vendors seeking specific performance against the purchaser, which cannot be done by the court, in the suit for specific performance, in order to render the title marketable.

Appeal from Circuit Court, Montgomery County; Gaston Gunter, Judge. .

Suit by Theobald Boylan and others against Albert F. Wilson. From decree for defendant, complainants appeal. Affirmed.

The contract between the parties follows:

"July 13, 1916. This agreement made by and between Annie U. Boylan, Theobald Boylan and Sallie M. Boylan, parties of the first part, and Albert F. Wilson, party of the second part, on this July 13, 1916. Whereas the parties of the first part have agreed to sell and convey unto the said Albert F. Wilson and the said Albert F. Wilson has agreed to buy, all their right, title and interest in and to lots 9 and 10 on north side of Madison avenue, according to the Pittman plat, for the sum of $1,800.00 clear of all expenses contingent to said sale. But said sale and transfer are subject to said payment, a good title, and is to be closed within a period of sixty days from date, and said deed is to be signed and delivered to the cashier of the Exchange National Bank, to be held in escrow by him until completion of sale and delivery of check by second party. Said parties of the first part are to furnish abstract for examination of title.

"Annie U. Boylan,
"Sallie M. Boylan,
"Theobald Boylan,
"Per Theobald Boylan.

"It is further agreed that all taxes due and assessed against the property for the year 1916 shall be paid by the party of the second part, and all rents to be collected by parties of the first part until the deal is closed.

"Albert F. Wilson."

Hugh Nelson, of Montgomery, for appellants. Wm. F. Thetford, Jr., of Montgomery, for appellee.

McCLELLAN, J. From a decree sustaining appellee's demurrers to the appellants' bill as last amended, the appeal is prosecuted. The complainants (appellants) seek the specific performance of a written contract for the sale and purchase of real estate, two lots in the city of Montgomery. The bill recites that the lots belonged in 1906 to T. J. Toole; that

he mortgaged them to Miss Carr in 1906; that in June, 1909, this mortgage was foreclosed under the power of sale, complainants becoming the purchasers of the lots and receiving a deed thereto; and that on July 13, 1916, the defendant (appellee) and complainants executed an agreement whereby complainants engaged to sell and defendant engaged to buy two of the lots sold at the foreclosure sale, the writing stipulating, among other things, for an abstract of title and for a "good title." In the mortgage to Miss Carr and in the conveyance to the complainants (purchasers at the foreclosure sale) the description was as follows:

"Lots one (1) two (2) nine (9) and ten (10) according to Whitman's plat recorded in the office of the judge of probate of Montgomery county, said lots 1 and 2 fronting 50 feet each on Jefferson street and lots 9 and 10 fronting 50 feet each on Madison avenue the said 4 lots together running all the way through the block from Madison avenue to Jefferson street."

In the contract between defendant and complainants the description of the subject-matter was as follows: "9 and 10 on north side of Madison avenue according to the Pittman plat."

The report of the appeal will contain the contract executed by the parties.

It appears from the bill that the plat referred to in the mortgage and in the deed to complainants was the "Whitman plat"; whereas, in the contract the reference is to the "Pittman plat." It is averred in the bill that this defect is immaterial; that it is a well-known fact, easily established, that there is no property on Madison avenue and Jefferson street in the city of Montgomery embraced in the Whitman plat, but said lots on Madison avenue and Jefferson street are included in the Pittman plat; that Toole owned the lots on Madison avenue and Jefferson street at the time the mortgage was executed, and after the purchase at the foreclosure sale the purchasers went into possession of said lots on Madison avenue and Jefferson street in the Pittman plat, and that the complainants have continued in the possession of the said premises, receiving the rents therefrom without interference by Toole or any one in his behalf; that at the time said agreement was executed by complainants and defendant, defendant was thoroughly acquainted with the property and with complainants' possession of. the same, and knew that the property was formerly owned by Toole; and that the said agreement and the deed therein mentioned were drawn up contemporaneously, the deed being drawn by the defendant himself, and was signed and acknowledged in accordance with the agreement between complainants and the defendant. It is further averred in the bill that Toole was adjudged a non compos mentis by the probate court of Montgomery county on January 10, 1910, and a guardian was ap-

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pointed for him; that at the time Toole had outstanding large mortgage indebtednesses incurred by him, a list thereof being shown in the bill; that all of said mortgages were made by Toole at or about the time said mortgage to Miss Carr was executed, or at a later date; that the title involved in said mortgages was the same title as here in suit; that all of said mortgage titles have been recognized in the court proceedings following the appointment of a guardian for Toole, and provision was made by the court for the payment of the listed mortgage indebtednesses from the proceeds of the sale of other property belonging to Toole, and which payments have been made as directed by the court, either on said mortgage indebtedness or the accrued interest thereon. It is further averred that the mortgage to Miss Carr was a valid and subsisting mortgage at the time of the foreclosure sale, and that the purchasers (complainants) acquired a valid title to the property here in question; that the time for redemption by said Toole or any one in his behalf has long since expired, and no one has a better right or title than complainants have in and to the lots described in the contract.

[1] The particular objection taken by the demurrer was that the appellants' averments disclosed the absence of a good title, a marketable title in the complainants. Unless otherwise qualified, a "good title" means a marketable title, a title "that can be sold to a reasonably prudent man who might desire the property, or a title that can be mortgaged to a person of reasonable prudence." Note to Justice v. Button (Neb.) 38 L. R. A. (N. S.) 1; Fagan v. Hook, 134 Iowa, 381, 105 N. W. 155, 157, 111 N. W. 981, and cases therein cited.

[2] Specific performance is not a matter of absolute right. It rests entirely in judicial discretion, to be exercised according to the settled principles of equity, not arbitrarily or capriciously, yet always with reference to the facts of the particular case. Hennessey v. Woolworth, 128 U. S. 438, 442, 9 Sup. Ct. 109, 32 L. Ed. 500; Wesley v. Eells, 177 U. S. 370, 376, 20 Sup. Ct. 661, 44 L. Ed. 810.

[3] Specific performance will not be compelled if under all the circumstances it would be inequitable to do so. Authorities, supra. A contract for the sale and purchase of land will not be compelled where the state of the title is the subject of reasonable doubt, or where it is reasonable to anticipate that the purchaser (respondent) will be exposed to litigation with respect thereto. Wesley v. Eells, supra, 38 L. R. A. (N. S.) pp. 4–7, noting numerous decisions.

[4] One who has contracted for a "good title" will not be required to take anything but a "good title," and the court will not compel him to buy a lawsuit. In Wesley v. Eells, supra, these statements express the mature judgment of the court:

" * * * A defendant, in proceedings for specific performance, shall not be compelled to accept a title in the least degree doubtful. It is not necessary that he should satisfy the court that the title is defective so that he ought to prevail at law; it is enough if it appear to be subject to adverse claims which are of such a nature as may reasonably be expected to expose the purchaser to controversy to maintain his title, or rights incident to it. * * * He ought not to be subjected, against his agreement or consent, to the necessity of litigation to remove even that which is only a cloud upon his title."

In the same case, as upon accepted authority, it was said:

"That the court will not compel a purchaser to take a title that will expose him to litigation or hazard."

The like doctrine was recognized in Smith v. Turner, 50 Ind. 367, 373; Swayne v. Lyon, 67 Pa. 436, 439; Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634, 636; Heller v. Cohen, 154 N. Y. 299, 306, 48 N. E. 527, 38 L. R. A. (N. S.) p. 6; 36 Cyc. p. 632.

[5] It is also, on the other hand, generally accepted that the doubt, to avail as a defense in an action to enforce specific performance, must be a reasonable one; must rest upon some debatable ground; a bare possibility of litigation not being efficient to render a title doubtful. 36 Cyc. p. 633.

[6] A misdescription in a not too remote deed in the chain of title, not capable of being corrected without litigation and the aid of parol evidence, operates to render the title unmarketable. Egelhoff v. Simpson, 50 App. Div. 595, 64 N. Y. Supp. 336; Smith v. Turner, supra; Meadows v. Michel, 135 App. Div. 213, 120 N. Y. Supp. 319. See Fry's Specific Performance (5th Ed.) c. XVIII, § 878 et seq.

[7, 8] The application of the stated principles to the facts and circumstances disclosed by the bill and the contract here sought to be enforced requires the conclusion that the trial court correctly sustained the demurrer to the bill at last amended. In the chain of the complainants' immediate muniments of title the lots, described by number, are referred to a different platting from that specified in the contract. It may well be that the complainants have, in point of actual fact, a good title to the lots purchased by them at the foreclosure sale in 1909; but, even so, it is quite evident that the misdescription indicated would necessarily affect the marketable quality of the title to the lots, unless a reformation of the deed under which complainants hold is properly effected. It would be manifestly inequitable to require the respondent to take the title which, in order to render it fairly marketable, should be relieved of the reflection that the stated misdescription imports. It has been held here, in accordance with general principles, that where one map or plat is referred to in a deed, and thus becomes a part of it, parol evidence cannot be received to show that another map or plat, not referred to in the instrument, was the map or plat intended. Thrasher v. Royster, 187 Ala. 350, 354, 65

South. 796; Guilmartin v. Wood, ·76 Ala. 204; Donehoo v. Johnson, 120 Ala. 438, 445, 24 South. 888. It is insisted, as upon the doctrine of Chambers v. Ringstaff, 69 Ala. 140, and other decisions in that line, that the defect in respect of the plats referred to in the mortgage and deed to complainants may be read to immateriality in the circumstances of this case. The line of ,authority upon which the appellants rely cannot be accorded influence with the same readiness in a cause to enforce specific performance of a contract to purchase land, as this court has been accustomed to accord the doctrine in cases where the inquiry involves the validity of'the conveyance itself; as is illustrated in the action of ejectment reviewed in Chambers v. Ringstaff, supra. Nevertheless, it was·there held that parol evidence is not admissible to relieve from the effect of a patent ambiguity. The description of the lots in the mortgage and in the deed to complainants must be regarded, in respect of the remedy here sought, to disclose a case of misdescription, not ambiguity. The reference in the terms of the description in the mortgage and in the deed to complainants to the two streets in the city of Montgomery does not warrant the court, in this action to enforce specific performance, in either eliminating from consideration the reference to the Whitman plat or in substituting therefor the Pittman plat. Only a court of equity, when its jurisdiction is efficiently invoked, can effect that reformation of the complainants' muniment of title. Furthermore, whether the particular lots numbered in the instruments just mentioned were, in fact, in the Whitman plat or in the Pittman plat necessarily required recourse to parol evidence, the consequences of the conclusion upon which it would be highly inequitable to require the respondent to bear. 38 L. R. A. (N. S.) p. 10.

The decree of the court below is affirmed. Affirmed.

ANDERSON. C. J., and SAYRE, J., concur. GARDNER, J., concurs in conclusion.