The plaintiffs have appealed from an adverse judgment of the Circuit Court. We reverse.
The appellee, Nationwide Mutual Insurance Company (hereinafter referred to as Nationwide), insured certain vehicles belonging to one of the appellants, Moses and Holloway Heating and Air Conditioning Company, Inc. (hereinafter Moses 
Holloway) under a "fleet policy." Moses Holloway, an Alabama corporation is the named insured in this fleet policy. The appellant M.R. Holloway owned over 95% of the stock of this corporation and his wife owned the rest of the stock.
On May 1, 1975, Paul Edward Holloway, the son of the appellant M.R. Holloway, sustained fatal injuries in a two-car automobile accident in Tuscaloosa County. The other car involved in this accident was driven by James Lee Hatter. Hatter, an uninsured motorist, also sustained fatal injuries in this accident. At the time of this accident, Paul Edward Holloway was driving a 1973 AMC Hornet which was insured under the fleet policy issued to Moses Holloway. Paul Edward Holloway attended high school and worked in the afternoon for Moses Holloway. The wreck occurred sometime after 11 p.m., when Paul was returning home from a date with Karen Burkhalter.
Thereafter, the appellant M.R. Holloway filed this action against Nationwide, Robert V. Wooldbridge, the administrator of the estate of James Lee Hatter, and Moses Holloway. Subsequent to the filing of the original complaint, Moses 
Holloway was realigned as a party plaintiff and Aubrey Noland, as insurance agent for Nationwide, was added as a defendant. The complaint, as last amended alleged, inter alia, as follows:
 1. James Lee Hatter negligently, wilfully or wantonly used, maintained, drove or operated his uninsured motor vehicle so as to cause his motor vehicle to collide with the automobile driven by Paul Edward Holloway and that as a result of this conduct, Paul Edward Holloway suffered fatal injuries.
 2. The fleet policy issued to Moses Holloway covered nine vehicles including the vehicle driven by Paul Edward Holloway at the time of the fatal accident and two trucks which were automatically covered by an "automobile inclusion" clause in the fleet policy, even though these two trucks were, in fact, not added to the policy until after the fatal accident.
 3. Aubrey Noland, acting as authorized agent for the defendant, Nationwide, represented to the plaintiff that the fleet policy would cover M.R. Holloway, individually, his spouse and relatives living in his household just as if the policy was issued to M.R. Holloway personally instead of Moses Holloway.
 4. The parties intended that M.R. Holloway and the members of his family would be the "named insureds" or the "designated insureds" on the fleet policy.
 5. The policy was issued in its present form, (with Moses Holloway as the named insured), through the unilateral mistake of one party, (Holloway), which the other party, (Noland and/or Nationwide) knew or should have known, or in the alternative through a mutual mistake, so that the insurance policy, as issued, did not express the true intent of the parties.
 6. The plaintiff, M.R. Holloway, reasonably expected to have family automobile coverage on all of the vehicles covered by the policy.
 7. The insurance policy was an adhesion contract, ambiguous, confusing or conflicting in its terms and should be construed most strongly against Nationwide. *Page 692 
 8. The defendants, Noland and Nationwide, solicited and undertook to procure or furnish insurance to M.R. Holloway personally, his spouse and relatives who were residents in his household; the defendants assured M.R. Holloway that no separate or individual insurance would be necessary on the automobiles or vehicles owned or used by him, his spouse, or relatives who were relatives in his household and that theretofore, M.R. Holloway made no effort to procure other insurance to cover these vehicles.
 9. The defendants negligently or wantonly, or through error or omission failed to procure the insurance coverage for M.R. Holloway.
The relief sought in the appellants' complaint included: a claim for damages against the estate of James Lee Hatter, a claim for damages against Noland and Nationwide, and a claim against Nationwide on the fleet policy seeking to "stack" the uninsured motorist coverage for all of the vehicles covered by the fleet policy. The plaintiffs also sought a declaratory judgment as to the rights and status of the parties under the fleet policy and reformation of the insurance policy so as to make M.R. Holloway, individually, a named or designated insured.
The trial court disposed of the appellants' claim with respect to the "stacking" issue by granting Nationwide's motion for partial summary judgment. An ore tenus trial, with an advisory jury, was conducted. The trial court subsequently entered a final judgment setting out certain findings of fact and ordering that the plaintiffs recover $10,000 from the estate of James Lee Hatter and $11,000 from Nationwide Mutual Insurance Company. The trial court further found that the plaintiffs were not entitled to recover damages from the defendant Aubrey Noland and they were not entitled to reformation of the insurance policy.
The plaintiffs filed numerous post-trial motions to no avail; hence this appeal. Basically, there are seven contentions for reversal.
 1. The trial court erred in granting the appellees' motion for partial summary judgment on the stacking issue.
 2. The trial court abused its discretion in refusing to grant the appellants' motion to sever the claims of insurance coverage and reformation from the claims of negligence and wantonness.
 3. The appellants' right to a jury trial, on certain issues, was abridged.
 4. The trial court erred in submitting certain verdict forms to the jury.
 5. The trial court made erroneous oral charges to the jury.
 6. The trial court erred in implicitly granting the appellees' motion for a directed verdict on certain issues.
 7. The trial court erred in stating that the appellants had only claimed $10,000 against the estate of Hatter.
This suit is somewhat complicated because of the several causes of action on different theories of recovery asserted in one complaint. The record on appeal consists of over 1600 pages. The appellants demanded a jury trial of the issues involved. The trial judge did not grant a jury trial as such, but instead impanelled an advisory jury. The court had previously granted partial summary judgment as to the stacking issue, but nevertheless submitted this issue along with all the other issues, including reformation, to the advisory jury. After the trial concluded, the court entered a final judgment deciding all of the issues.
For the sake of clarity, we think it advisable to set out in a general way the causes of action involved. The appellants sought a declaratory judgment on insurance coverage and the stacking of uninsured motorist coverage on the several vehicles in the fleet. The appellants also sought reformation of the insurance policy so that M.R. Holloway would be a named insured along with the corporation, Moses and Holloway, or reformed at least to the extent that M.R. Holloway would be a designated insured. This relief, if granted, would aid the appellants in their quest to stack the uninsured *Page 693 
motorist coverages. There was also a cause of action against Nationwide and Nolan for negligently, or wantonly, failing to provide adequate insurance coverage. And finally, of course, there was the wrongful death action against Hatter, which formed the foundation for the other causes of action, because if Hatter, the uninsured motorist, was not liable then the other causes of action are moot.
We are of the opinion that the trial court committed reversible error in denying appellants a jury trial on some of the issues involved. The appellants were clearly entitled to a jury trial on the death action, and the action for negligently failing to insure. When a party seeks reformation of an instrument, or contract, he is not entitled to a jury. Only a court of equity can reform an instrument. Boyland v. Wilson,202 Ala. 26, 79 So. 364 (1918). On the other hand, in an action for declaratory judgment a party may or may not be entitled to a jury trial, depending on the issues involved. Reed v. Hill,262 Ala. 662, 80 So.2d 728 (1975).
One of the complicating factors in this case is that the causes of action for a declaratory judgment, reformation and negligent failure to insure are somewhat interdependent. The stacking issue could depend on the outcome of the reformation decision, and the reformation decision could, but not necessarily, depend upon the resolution of the claims for negligent failure to insure. We think that it was this complicity and possible interdependence of these causes of action which led the trial judge to fall into error.
We are of the opinion that upon remand of this cause a prudent use of Rules 18 (c), 21 and 42 (b), ARCP, will avoid many of the problems the trial judge encountered in the trial of this cause.
Because the stacking question is central to the entire case, we think several observations are necessary.
The policy's uninsured motorist coverage provides in relevant part as follows:
II. Persons Insured.
 Each of the following is an Insured under this insurance to the extent set forth below:
 (a) the Named Insured and any designated Insured and, while residents of the same household, the spouse and relatives of either;
 (b) any other person while occupying an insured highway vehicle; and . .
Because of this Court's decision in State Farm AutomobileInsurance Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974), the policy's omnibus liability clause must also be considered. It is as follows:
II. PERSONS INSURED
 Each of the following is an Insured under this insurance to the extent set forth below:
(a) the Named Insured;
 (b) any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the Named Insured;
 (c) any other person while using an owned automobile or a hired automobile with the permission of the Named Insured provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an Insured only if he is:
(1) a lessee or borrower of the automobile, or
 (2) an employee of the Named Insured or of such lessee or borrower; . . .
Appellants contend that because Paul Edward Holloway was a part-time employee his estate is entitled to stack. They rely on General Mutual Insurance Co. v. Gilmore, 294 Ala. 546,319 So.2d 675 (1975). We do not consider the opinion in Gilmore to be controlling. Therefore, absent reformation of the policy, the cases of Lambert v. Liberty Mutual Insurance Company,331 So.2d 260 (Ala. 1976), and Billups v. Ala. Farm *Page 694 Bur. Mut. Cas. Ins. Co., 352 So.2d 1097 (Ala. 1977), clearly indicate that stacking is not permitted in this instance.
According to the decisions, certain insureds are entitled to uninsured motorist coverage independently of any occupancy or use on their part of a vehicle insured under the policy. These insureds are known as "insureds of the first class." Under the present policy, such insureds hypothetically include (1) the named insured, (2) a designated insured, (3) a spouse or relative of either the named insured or a designated insured, and (4) a partner or executive officer of the named insured.
In the present case, the named insured was the corporation, Moses Holloway. There was no designated insured. However, M.R. Holloway was an executive officer of the corporation and therefore he would be an insured of the first class. Had Holloway been involved in the accident rather than his son, then arguably, the former would have had the right to stack the uninsured motorist coverages under the policy.
These same cases recognize a second group of insureds. These are insureds of the second class and include mere occupants of the vehicle and also permissive users covered under the omnibus liability clause. These persons are entitled to uninsured motorist coverage solely because of their occupancy or use of an insured vehicle. Therefore, their right to coverage is necessarily tied to and limited by the coverage applicable to such vehicle and as governed by the policy's limits of liability clause. This is confirmed by the following language in the Court's opinion in Lambert:
 We agree with the Virginia Supreme Court that the rationale upon which stacking under multi-vehicle policies has been justified for insureds of the first class is inapplicable to insureds of the second class. Although an insured of the first class is covered under uninsured motorist policy provisions in whatever vehicle he may be occupying, an insured of the second class is similarly covered only if the particular vehicle he occupies is specifically included under the coverage of some policy. Thus, the payment of an additional premium to cover additional vehicles obtains a substantial benefit insofar as insureds of the second class are concerned. Not being a party to the contract, the expectations of an insured of the second class as to the extent of his coverage do not result in contract ambiguity and are not sufficient to avoid the effect of the policy's limiting clause.
331 So.2d at 264-65.
Similarly, in Billups the Court stated:
 An insured of the second class, consisting of permissive users of the vehicle and any occupants, is not so entitled. This classification is consistent with reasonable expectations of the parties to the contract, the named insured and the insurance company.
352 So.2d at 1104.
In Billups, stacking was sought by or in behalf of certain occupants of the insured vehicle, and, most significantly, the driver who was an alleged permissive user under the liability coverage. The court's holding was to the effect that, even if the driver was found on remand to be a permissive user, his personal representative could not stack the applicable coverages. The driver would still have belonged to that class of insureds which the law denies the stacking privilege.
The Uninsured Motorist Statute, Code 1975, § 32-7-23, absent rejection by the named insured, mandates uninsured motorist coverage for the protection of persons insured under a motor vehicle liability policy. As heretofore construed by this Court, the statute mandates stacking in the case of the named or designated insureds as well as relatives living in the same household where such persons are included in the policy's definition of "insureds" for purposes of liability. These persons are entitled to stack the available coverages because their right to coverage under the primary liability coverage is not limited to their use or occupancy of a vehicle insured under the policy. A clause limiting their rights of *Page 695 
uninsured motorist coverage to the minimum coverage available on only one insured vehicle would be an unreasonable derogation of the mandate of the statute, because additional premium charges would not afford them any additional benefits. Uninsured motorist coverage, not stacking, is mandated for permissive users where liability coverage arises as an incident of use of an insured vehicle. Thus, the policy limitation of $10,000 for uninsured motorist coverage of a permissive user is valid. As the policy is written, Paul Edward Holloway was not a named or designated insured.
Appellants also contend that the court erred in submitting only the following verdict to the jury:
 1. We, the jury, find that the Plaintiff Holloway is entitled to uninsured motorist coverage and medical payment coverage on only one vehicle involved in the accident and fix and assess Plaintiff's damages at $ _____.
 2. We, the jury, find the Defendant Aubrey E. Noland acting in the line and scope of his duty was guilty of wanton conduct and as a proximate consequence of such wanton conduct the Plaintiff Holloway is entitled to "stack" the uninsured motorist coverage on each of the several policies issued to the corporation Moses Holloway Heating Air Conditioning Company, Incorporated, and we fix and assess Plaintiff's damages at $ ______.
In view of our holding there is no need to address this issue except to say that had there been a regular jury, rather than an advisory jury, then error would be present. The effect of the failure to mention negligence was to give a directed verdict sub silentio on that issue as to Noland.
The appellants contend that the claim for "$1 0,000" was a typographical error, the error being the omission of a zero between the "1" and the first "0." They assert that the space indicates the inadvertent omission of a character and that the case was tried in all respects as though the claim against the estate of the uninsured motorist was greatly in excess of $10,000.
We are of the opinion that on remand the court should allow a proper amendment to resolve this issue.
There were other instances of error in the record; however, many of them were harmless and the others will probably not arise in the event of a new trial or trials. The judgment is reversed and remanded.
REVERSED AND REMANDED.
All the Justices concur, except BEATTY, J., not sitting.